**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Charles SPINELLA, Frank Leslie Merritt and Jerry Buchanan, Defendants-Appellants.**

No. 73–3904.

United States Court of Appeals, Fifth Circuit.

Jan. 13, 1975.

Richard R. Booth, Miami, Fla., for Spinella.

Angelo A. Ali, Miami, Fla., for Merritt.

Aram P. Goshgarian, Miami Beach, Fla., for Merritt and Buchanan.

Robert W. Rust, U. S. Atty., William R. Northcutt, Asst. U. S. Atty., Miami, Fla., for plaintiff-appellee.

Before WISDOM and BELL, Circuit Judges, and BREWSTER, District Judge.

WISDOM, Circuit Judge:

The defendants-appellants, Frank Merritt, Jerry Buchanan, and Charles Spinella, with one other, John Lettieri, were convicted of receiving and transporting stolen vehicles in interstate commerce, in violation of 18 U.S.C. §§ 2312 and 2313, and of conspiring to commit those offenses, in violation of 18 U.S.C. § 371. Lettieri did not join in this appeal. Buchanan and Merritt raise two contentions. First, they assert that the trial court violated their Sixth Amendment right to an impartial jury by refusing to grant a mistrial when it was discovered that two jurors had received threatening telephone calls during the course of the trial. Second, they assert that the trial court abused its discretion and denied them a fair trial in that it did not grant Lettieri's motion for severance of defendants and for separate trials. Lettieri's objective was to introduce exculpatory testimony of Buchanan. Spinella also raises two issues on appeal. First, he contends that the double jeopardy clause prohibits a trial court once it has granted a motion for a new trial and the second trial has commenced before a jury, from aborting the second trial without the consent of the defendant, vacating the order granting a new trial, and reinstating the guilty verdict rendered in the earlier trial. Second, he contends that the trial court abused its discretion in denying his motion for severance filed between the first and second trials.

We affirm the judgment against Merritt and Buchanan; we vacate the judgment against Spinella.

## I.

Mrs. Pushferran, one of the jurors, described the telephone call she received one evening during the course of the trial as follows:

It was a little after nine o'clock or maybe nine o'clock. The phone rang, I picked it up and answered and said, "Hello." Someone on the other line, a man, a gentleman, said, "Miss Pushferran?" I said, "Yes." He said, "Mrs. Pushferran?" I said, "Yes." He said, "I am going to tell you this one time only and you better listen." He said, "It is about your husband," and I hung up because I got nervous and I just hung up.

Mr. Buckhalter, another juror, described a similar telephone call:

So, I picked up the phone. I said, "Hello," and there was a man's voice on the phone that said, "Mr. Buckhalter?" I said, "Yes, sir." He said, "You know why I'm calling." I said, "No, I don't." I said, "Who is this?" He hung up . . . ..

Mrs. Pushferran told the court that she had never received such a call before and that the episode upset her. Mr. Buckhalter, on the other hand, said that he had received "prank" telephone calls on a number of earlier occasions unrelated to the trial, and that the one involved here did not bother him any more than the others. At the request of defense counsel, the court excused Mrs. Pushferran from serving on the jury.

■ In these circumstances, the trial court had a duty to inquire into the character of the potentially prejudicial material to which the jury had been exposed, the extent of the exposure, and its effect upon the jury's ability to render an impartial verdict. United States v. Barson, 5 Cir. 1970, 434 F.2d 127, 131; Paz v. United States, 5 Cir. 1972, 462 F.2d 740, 747. There are a number of ways in which this duty can be discharged. For example, in the analogous context of potentially prejudicial publicity during the course of trial, the American Bar Association Standards Relating to the Administration of Criminal Justice, Fair Trial and Free Press, § 3.5(f) (1974), provides that the trial court should determine whether the material disseminated raises "serious questions" of potential prejudice to the defendant. In doing so the court "may on its own motion or shall on motion of either party question each juror, out of the presence of the others" regarding his exposure to the material.

Here, however, so the appellants argue, the court did not question each juror out of the presence of the others, as the ABA Standards suggest. Moreover, they suggest that the potential prejudice of the calls was so great in any event that no corrective measures taken by the trial court would have prevented its affecting the jury. We reject both contentions.

■ This Court recently considered measures that should be taken to ensure that certain inadmissible books which had reached the jury room had not affected the jury's verdict. In Paz v. United States, 5 Cir. 1972, 462 F.2d 740, 746, we held that the case should be remanded for an evidentiary hearing to determine "how the books reached the jury room; whether they were available to members of the jury, and if so, for how long; the extent if any, to which they were seen, read, discussed and considered by members of the jury; and such other matters as may bear on the issue of the reasonable possibility of whether they affected the verdict". The books in *Paz* were on narcotics and drug abuse, and the prosecution was for a drug-related offense. Nevertheless, we imposed no requirement that jurors be examined individually. Here, the telephone calls were vague and not explicitly related to any matter at issue in the trial. We consider that they were not so inherently prejudicial so as to require the grant of a mistrial.

■ The trial judge took adequate corrective action. He questioned Mrs. Pushferran and Mr. Buckhalter, the only jurors who had received the calls, as to

the telephone conversation and examined them as to the nature and extent of their discussion of the calls with the other jurors. Then, in deference to *defense* counsel's comment that to question each of the remaining jurors individually would serve to underscore the episode unduly, the court called in the whole jury and asked them whether they were willing to continue serving on the jury and were able to discharge their duties fairly and impartially in spite of the telephone calls. All of the other jurors, except Mrs. Pushferran, who had been excused, and the alternate said that they were able to ignore the incident and proceed to a fair and impartial resolution of the case. In light of the vague nature of the telephone calls and the misgivings defense counsel had voiced regarding individual questioning of the jurors, we hold that the procedure adopted by the trial court was adequate to protect the defendants from potential prejudice stemming from the calls.

## II.

Before the first trial involved in this appeal, Lettieri filed a motion under Fed.R.Crim.P. 14 that he be tried separately from Merritt, Spinella, and Buchanan, on the ground that if a separate trial were granted, these co-defendants would testify at his trial and that their testimony would exculpate him. Buchanan and Merritt did not join in this motion, yet they seek reversal of their convictions on the ground that its denial deprived them of a fair trial. Buchanan later filed a motion for entry of an order permitting him to "adopt all motions filed in behalf of" Lettieri. He also executed an affidavit in support of the motion for severance in which he stated that to his knowledge Lettieri "did not commit any of the wrongful acts attributed to him in the indictment", and that he, Buchanan, would "not testify in a joint trial but would testify in a separate trial." In cases where the allegedly aggrieved defendant has appealed, a penumbra protection has often been denied co-defendants. Glasser v. United States,

315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); United States v. Foster, 7 Cir. 1973, 478 F.2d 1001; United States v. Bamberger, 9 Cir. 1973, 482 F.2d 166; Wright v. United States, 9 Cir. 1965, 353 F.2d 362. Those cases that have allowed any degree of penumbra effect have involved the extension of the protection sought by the directly aggrieved defendant. See Rosencranz v. United States, 1 Cir. 1964, 334 F.2d 738.

▇ Whatever benefit severance might have brought to Lettieri, there is not "the clear showing of prejudice" to Buchanan and Merritt resulting from the denial of the motion for severance that is "required to establish that the District Court abused its discretion in denying the motion". United States v. Eastwood, 5 Cir. 1974, 489 F.2d 818, 822. Indeed, the appellants have failed to demonstrate any respect in which the denial of Lettieri's motion prejudiced them. We dismiss therefore as insubstantial the contention that Buchanan and Merritt were denied a fair trial because Lettieri's motion for severance was denied.

## III.

Before the first trial, as we stated, the defendant Lettieri filed a motion for severance on the ground that he would otherwise be denied exculpatory testimony of his co-defendants. The court denied this motion, but noted upon the docket sheet that the denial was without prejudice to Lettieri's right to renew the motion at time of trial. The court added that the motion as filed was "unsupported by any affidavits or other evidence regarding what the testimony of [co-defendants] will be and its probative value to [Lettieri's] defense." After the court denied Lettieri's motion, but still before the first trial, Spinella filed a document purporting to .adopt all motions previously filed on behalf of the other defendants. It did not mention Lettieri's motion for severance, nor were there any affidavits or other evidence filed in support of the document. The court, in any event, took no action regarding the document. The trial com-

menced, and the jury found Spinella guilty as to the first count of the indictment. After the court had sentenced all the defendants, Spinella and Lettieri filed motions for a new trial, and, in support of the motions, an affidavit of Buchanan that he would testify to exculpate them if a new trial were granted. The trial court granted the motion. The new trial for Lettieri and Spinella then commenced. On the second day of trial, the defense rested without having called Buchanan. The court, noting that the only reason it had granted Spinella and Lettieri the new trial was to enable Buchanan to testify on their behalf, discharged the jury, vacated its order granting a new trial, and reinstated the convictions the government had obtained at the first trial.

The court's chagrin at the turn of events immediately preceding entry of this order is understandable. Defense counsel could not force Buchanan to testify in behalf of Lettieri, but the representations counsel had made to the court, and the fact that Buchanan was in the hall outside the courtroom during the course of the second trial, apparently waiting to be called as a witness so that he could fulfill the promises set forth in his affidavit, led the court to believe that Buchanan would, in fact, testify. Indeed, it might even be argued that the trial court would have abused its discretion if, upon receiving the motion for a new trial supported by Buchanan's affidavit, it had denied the motion. Cf. Byrd v. Wainwright, 5 Cir. 1970, 428 F.2d 1017, 1022.

The movants failed to make a specific motion for severance, supported by affidavits on other evidence, before the commencement of the original trial. This failure argues strongly for a denial of a new trial. Spinella's motion, though styled a motion for a new trial, was, in substance, a belated motion for severance; it makes no effort to characterize Buchanan's affidavit as "newly discovered evidence". The ABA Standards relating to the Administration of Criminal Justice, Joinder and Severance § 2.1(a) (1974) provides:

A defendant's motion for severance of offenses or defendants must be made before trial, except that a motion for severance may be made before or at the close of all the evidence if based upon a ground not previously known. Severance is waived if not made at the appropriate time.

In the case before us, however, the motion was granted, not denied. We must, therefore, turn our inquiry to the effect of granting the motion after the second jury had been sworn.

 Many cases hold that a court of general jurisdiction has the power to vacate an order granting a new trial *before* the new trial commences in a *civil* case. See Annot., Power of Court to Vacate or Modify Order Granting New Trial in Civil Case, 61 A.L.R.2d 642. We have found no case, however, dealing specifically with the effect of commencing a second trial on an earlier criminal conviction. Jeopardy attaches when a criminal trial commences before the jury. United States v. Jorn, 1971, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543, Green v. United States, 1957, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199. The order granting the new trial necessarily has the effect of vacating the judgment of conviction rendered in the earlier trial. Cf. Miller v. United States, 5 Cir. 1955, 224 F.2d 561. It follows, then, that the trial court in the present case had no power to revive a judgment of conviction that became a nullity when the defendants were placed in jeopardy in the second trial. The order granting the new trial was unconditional; there was no waiver by the defendants of their right not to be put in jeopardy twice for the same offense. The fact that a new trial could only work to their advantage, since they had been convicted, is immaterial to the status of the first conviction once the trial began anew.

The only question that remains, once we have determined that the judgment of conviction obtained at the first trial could not be "reinstated", is whether Spinella may be tried again for the offenses charged in the first two trials. This question, in turn, depends upon

whether the trial court was justified in aborting the second trial. The standard to be applied is that first laid down by Mr. Justice Story in 1824: when the trial court on its motion or on motion of the prosecution declares a mistrial, without the consent of the defendant, a retrial is permissible only if there exists a "manifest necessity" for the declaration of the mistrial lest "the ends of public justice would otherwise be defeated". United States v. Perez, 1824, 9 Wheat. (22 U.S.) 579, 6 L.Ed. 165. *Perez* involved the discharge of a jury that could not reach a unanimous verdict in a capital case, without the consent of the defendant.

Later cases have amplified the test established in *Perez*. Justice Black, writing for the Court in Wade v. Hunter, 1948, 336 U.S. 684, 688–89, 69 S.Ct. 834, 837, 93 L.Ed. 974, 978 stated:

> The double-jeopardy provision of the Fifth Amendment, however, does not mean that every time a defendant is put to trial before a competent tribunal he is entitled to go free if the trial fails to end in a final judgment. Such a rule would create an insuperable obstacle to the administration of justice in many cases in which there is no semblance of the type of oppressive practices at which the double-jeopardy prohibition is aimed.

The *Wade* Court held that manifest necessity was established when a court-martial, having continued a case to obtain the testimony of witnesses who were ill at the time of the first hearing, was overtaken by events (it was being held during the invasion of Germany in 1945), and therefore dissolved itself and transmitted the charges to another unit then stationed in the vicinity of the alleged offense, where a new court-martial was constituted.

In Gori v. United States, 1961, 367 U.S. 364, 81 S.Ct. 1523, 6 L.Ed.2d 901, the trial court in the first trial, fearing that the prosecution's line of questioning was calculated to elicit information that would inform the jury of prior crimes committed by the accused, precipitately declared a mistrial without consulting either the prosecution or the defense. The Court affirmed the defendant's conviction secured at a second trial on the same offense, noting that the record was "skimpy" and that the court of appeals (which had also affirmed the conviction) was better situated to pass on the trial court's action, dependent as it was on factors such as the atmosphere in the district court and prosecutorial practices there. The fact that the trial court's action could only benefit the defendant also weighed heavily on the Court's mind.

It is this last element that distinguishes *Gori* from United States v. Jorn, 1971, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543. *Jorn* involved a prosecution for wilful participation in the preparation of fraudulent income tax returns. A taxpayer for whom the defendant had prepared a return was called as a witness, and, at the suggestion of defense counsel, the trial court admonished the witness of his right against self-incrimination. The witness was willing to testify, and informed the court that the Internal Revenue Service agent had advised him of his rights at their first meeting. For some reason, the court was still uneasy, and would not permit him to testify until he had consulted an attorney. There were several other witnesses in a similar situation whom the Government also wished to call. The court therefore declared a mistrial so that all these witnesses would have ample opportunity to consult attorneys and to be advised of their rights. The Supreme Court upheld a plea of former jeopardy when the Government sought to renew the prosecution. The mistrial was declared for the benefit of the witnesses, not the defendant as in *Gori*. Moreover, the Court noted, the problem of making certain that the taxpayer witnesses were suitably advised of their rights might have been solved by the simple expedient of a continuance, but this course was precluded by the abrupt discharge of the jury.

Both *Gori* and *Jorn* may be contrasted with the Supreme Court's most recent

treatment of the general problem. Illinois v. Somerville, 1973, 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425. *Somerville* involved a prosecution for theft. The grand jury had returned an indictment, the case had been called for trial, and the jury had been sworn. Before any evidence had been presented, the prosecution realized that the indictment was fatally deficient in that it failed to allege that the defendant intended to deprive the owner of the property in question. Under Illinois law, the defect was fatal to the indictment and could be successfully urged on appeal as a jurisdictional defect rendering any final judgment of conviction ineffective. Accordingly, the prosecution moved for a mistrial, which was granted over the defendant's objection. The Supreme Court upheld the district court's denial of habeas relief relying in part on such precedents as Lovato v. New Mexico, 1916, 242 U.S. 199, 37 S.Ct. 107, 61 L.Ed. 244. In *Lovato* the Court held that manifest necessity required discharge of the jury when, after it was sworn, the prosecution realized that the defendant had not pleaded to the indictment. The Court in *Somerville* held that manifest necessity was present and that the trial court need not have let the case proceed to conviction knowing that settled Illinois law would require reversal of the conviction. *Lovato* and *Somerville* are both examples of cases in which retrial after mistrial has been permitted because some procedural defect or default on the part of the prosecution threatened to nullify the first proceeding. It is perhaps significant, however, that in both cases the mistrial was declared at the outset, before the taking of evidence.

The determination whether "manifest necessity" exists for the declaration of a mistrial is, of course, an inquiry particularly suited to case-by-case analysis, and not hospitable to generalities. "[V]irtually all of the cases turn on the particular facts and thus escape meaningful categorization". *Somerville*, 410 U.S. at 464, 93 S.Ct. at 1070. The Government naturally urges that the interest of public justice would best be served by our approval of the trial judge's action in aborting the second trial. We cannot do this. The trial judge failed to consider alternatives to declaring a mistrial. United States v. Kin Ping Cheung, 5 Cir. 1973, 485 F.2d 689. He could have denied the motion for a new trial, possibly on the ground that the reasons advanced in support of it were not timely presented. Having granted the new trial, he should have let the case go to the jury when it became apparent that the exculpatory testimony of Buchanan would not be forthcoming. There simply was no necessity for aborting the second trial, and, since the order granting the new trial could not be vacated once jeopardy had attached in the second trial, it follows that Spinella must be acquitted of the offenses charged.

This result may be distasteful to some, and we recognize that it might be argued that our decision will serve to encourage motions for new trials in cases involving multiple defendants on grounds similar to those urged in the motion involved in this case. In response, we note that the motion might be denied as untimely. Moreover, when applicable, the statutory sanctions available against false affidavits and false testimony should be invoked against those whose proffer of exculpatory testimony is the basis upon which a new trial has been granted. Further, the prosecutor might well consider the grant of statutory immunity from prosecution, when it is available, as a means of ensuring that the proffered testimony will be forthcoming. Finally, since the device of joint trials is tolerated largely as a means of promoting prosecutorial and judicial economy, the prosecutor might well give careful consideration to seeking separate trials from the beginning in any case in which he has reason to believe the difficulties encountered here may recur: the trial court might give similar consideration to motions for severance in such cases.

We do not reach Spinella's second contention, that the trial court abused its

 

discretion in denying his motion for severance from Lettieri, filed the day before the second trial and presented to the court by the clerk the morning of the trial.

\* \* \*

For the reasons stated, the judgments of conviction entered against Buchanan and Merritt in the first trial are affirmed. The judgment of conviction entered at that trial against Spinella, which the district court attempted to "reinstate" after aborting the second trial, is vacated, and the cause remanded to the district court with instructions to enter a judgment of acquittal on the offenses charged in favor of Spinella.

Affirmed in part, vacated in part, and remanded with instructions.