**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Edward STARLING, Defendant-Appellant.**

**No. 77–2706.**

United States Court of Appeals, Fifth Circuit.

April 21, 1978.

Andrew H. Marshall, Athens, Ga., for defendant-appellant.

William L. Harper, U. S. Atty., William M. Tetrick, Jerome J. Froelich, Jr., Asst. U. S. Attys., Atlanta, Ga., for plaintiff-appellee.

Before TUTTLE, COLEMAN * and CLARK, Circuit Judges.

TUTTLE, Circuit Judge:

The appellant, Edward Starling, was charged in a single indictment with embezzlement of a letter from the United States mails and unlawful conversion of postal monies, in violation of 18 U.S.C. §§ 1709, 1711. His jury trial ended when the district court, sua sponte, declared a mistrial. Prior to an anticipated second trial, appellant moved to dismiss the indictment, contending that reprosecution was barred by the Double Jeopardy Clause of the Fifth Amendment. The district court denied the motion, precipitating this appeal. We reverse.

## I. FACTS

Appellant's trial commenced on March 21, 1977. The presentation of evidence consumed two days, and the case was submitted to the jury on March 23, 1977. Approximately three hours after it retired, the jury reported that it was "hopelessly deadlocked." The foreman informed the court that the jurors had made no progress toward reaching a verdict. In response the court issued some additional instructions and ordered further deliberations. Several hours later the jury sent the court a note, which read:

> One of the jurors briefly spoke with the defendant and [his] wife on March 22nd around 12:30 p. m. This information just came to light this afternoon at 3:45 p. m., and that the defendant also attempted to speak to other jurors while said jurors were on the telephone involved in a conversation.

Receipt of this note prompted the court to interrupt the jurors' deliberations for another discussion in open court.

After learning that no further progress toward a verdict had been made, the court inquired about the incidents brought to light in the note. The following colloquy between the court and a juror ensued:

> Court: Yes, ma'am. Did the defendant talk with you yesterday?
>
> Juror: He didn't talk. He bowed head and—
>
> Court: Oh, is that all?
>
> Juror: —as I walked around here, I said, "Is that your wife?"
>
> Court: All right. . . .

Apparently satisfied that no misconduct had taken place, the court moved on to a second juror, the foreman. He explained that appellant had made no attempt to discuss the case and that whatever had transpired did not have any effect. Significantly, the foreman stated: "[The note] was only turned in to you for the simple reason we took a vote and felt that you should know about it."

After receiving this brief explanation of the foreman's contact with appellant, the court inquired as to whether the jury would be able to reach a verdict. The foreman stated that the jurors had been "in the middle of some discussions" when the marshall summoned them to court and requested "at least fifteen minutes" for further deliberations. Before the jury could retire, the following exchange occurred:

> Court: All right. If—does the conversation, of course, now, all the jurors were aware of the conversation we've just had about any talk or anything?
>
> Foreman: Yes, sir. We took a vote.
>
> Court: And no one has—will that fact in any way affect any juror or has there been any indication that that fact has

---

* Judge Coleman did not participate in the consideration or decision of this case. Pursuant to 28 U.S.C. § 46(d), the case is decided by a quorum of the court.

affected any juror's judgment or opinion? Has that been expressed?

Foreman: Yes, sir.

Court: It has?

Foreman: Yes, sir.

Court: *And there are some jurors who feel that it did have an effect on—*

Foreman: *That it should be brought to light.* And I think we should pursue—

Court: I think if there is any question in that regard, I'm inclined to not let you deliberate on the case any more, if any juror thinks it might have affected his or her judgment in any way, regardless of how innocent it might be. If any juror feels he or she was influenced by the fact there was conversation or any other thing has influenced you by the fact that there was some conversation with another person, in either event, I would not want to allow the jury to continue the deliberations, if that is the feeling of any of the jurors.

Under those circumstances and with what you have reported to be before, Mr. Foreman, I'm not sure I would allow any further deliberation in the case, and I think I won't—in fact, I'll direct that an order of mistrial be entered, and I'll sign it later and withdraw the case from the jury's consideration. [emphasis added]

The jury was dismissed without the benefit of any argument from counsel as to the need or propriety of a mistrial. No alternatives to a mistrial were considered.

## II. LEGAL STANDARDS

The Fifth Amendment to the United States Constitution commands that no "person [shall] be subject for the same offence to be twice put in jeopardy of life or limb."[1] The underlying idea of this deeply-rooted tenet of our jurisprudence is that

the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

*Green v. United States,* 355 U.S. 184, 187–88, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957). The protections offered by the double jeopardy ban include a stringent limitation on the government's right to reprosecute after a mistrial is declared without the consent of the accused. *See United States v. Wilson,* 420 U.S. 332, 342–44, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975).

The authoritative starting point of our law in this field is the opinion in *United States v. Perez,* 22 U.S. (9 Wheat) 579, 6 L.Ed. 165 (1824).[2] In *Perez,* Mr. Justice Story articulated the principles which have since guided the federal judiciary in its application of the concept of double jeopardy to situations giving rise to mistrials:

We think, that in all cases of this nature, the law has invested courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all of the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated.

22 U.S. at 579. There are, of course, degrees of necessity, and a "high degree" is required before a mistrial is appropriate. *Arizona v. Washington,* —— U.S. ——, ——, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978).

---

1. For a thoughtful analysis of the common law underpinnings of the Double Jeopardy Clause, see *United States v. Wilson,* 420 U.S. 332, 339–42, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975) and *Green v. United States,* 355 U.S. 184, 200–203, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957) (Frankfurter, J., dissenting).

2. Wholly different considerations are involved when an accused either requests or consents to a mistrial, *see United States v. Dinitz,* 424 U.S. 600, 606–608, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976); *United States v. Evers,* 569 F.2d 876, 878 (5th Cir. 1978), or in the event of prosecutorial misconduct. Neither of these factors is present in this case.

■ Since *Perez*, the Supreme Court has faithfully adhered to the manifest necessity standard in a variety of factual contexts. It is now beyond dispute, for example, that reprosecution is not barred after a conviction is reversed on appeal, *United States v. Ball*, 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300 (1896), or on collateral attack, *United States v. Tateo*, 377 U.S. 463, 84 S.Ct. 1587, 12 L.Ed.2d 448 (1964). Likewise, a second prosecution is not prohibited when the jury is dismissed because they cannot reach a verdict, *Logan v. United States*, 144 U.S. 263, 12 S.Ct. 617, 36 L.Ed. 429 (1892); *United States v. Perez*, 22 U.S. at 579; because of the disqualification of a juror, *Thompson v. United States*, 155 U.S. 271, 15 S.Ct. 73, 39 L.Ed. 146 (1894); *Simmons v. United States*, 142 U.S. 148, 12 S.Ct. 171, 35 L.Ed. 968 (1891); because of a "mere irregularity of procedure," *Lovato v. New Mexico*, 242 U.S. 199, 37 S.Ct. 107, 61 L.Ed. 244 (1916); or because of a tactical necessity in wartime, *Wade v. Hunter*, 336 U.S. 684, 69 S.Ct. 834, 93 L.Ed. 974 (1949).

■ Although the Supreme Court consistently has eschewed attempts to develop any mechanical formula by which to gauge the propriety of a mistrial, *Illinois v. Somerville*, 410 U.S. 458, 464, 93 S.Ct. 1066, 1070, 35 L.Ed.2d 425 (1973) ("virtually all of the cases turn on the particular facts and thus escape meaningful categorization"); *Wade v. Hunter*, 336 U.S. at 691, 69 S.Ct. 834; *Downum v. United States*, 372 U.S. 734, 737, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963), some guiding principles have emerged. The decision to declare a mistrial and dismiss the jury is not to be undertaken lightly.[3] The courts, in assessing the need to terminate the proceedings before conclusion, have been instructed to balance "a defendant's valued right to have his trial completed by a particular tribunal" with the "public's interest in fair trials designed to end in just judgments." *Wade v. Hunter*, 336 U.S. at 689–690, 69 S.Ct. at 837. And although a district court is accorded broad discretion in determining that particular circumstances arising at trial require it to abort the proceedings,[4] "reviewing courts have an obligation to satisfy themselves that . . . the trial judge exercised 'sound discretion' in declaring a mistrial." *Arizona v. Washington*, at ——, 98 S.Ct. at 835, *quoting United States v. Perez*, 22 U.S. at 579; *United States v. Jorn*, 400 U.S. 470, 485, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971). In particular we must insure that the district court kept in the forefront the defendant's valued right "of being able, once and for all, to conclude his confrontation with society through the verdict of a tribunal he might believe to be favorably disposed to his fate." *Id.* at 486, 91 S.Ct. at 558; see *Illinois v. Somerville*, 410 U.S. at 466, 93 S.Ct. 1066; *Wade v. Hunter*, 336 U.S. at 689, 69 S.Ct. 834.

## A. Inability to Agree

At oral arguments in this case, the government steadfastly maintained that the district court's decision to declare a mistrial was based in part upon the jury's inability to reach a verdict. While it is plain that such circumstances have been deemed sufficient to create a manifest necessity for mistrial, *Keerl v. Montana*, 213 U.S. 135, 138, 29 S.Ct. 469, 53 L.Ed. 734 (1909); *Dreyer v. Illinois*, 187 U.S. 71, 84–86, 23 S.Ct. 28, 47 L.Ed. 79 (1902); *Logan v. United States*, 144 U.S. 263, 297–98, 12 S.Ct. 617, 36 L.Ed. 429 (1892); *Rothaus v. United States*, 319 F.2d 528, 529 (5th Cir. 1963), the record before us will not support a finding that the district court could have reason-

---

**3.** In *Perez*, the Court stressed that "the power [to declare a mistrial] ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes." 22 U.S. at 579. *See also United States v. Wilson*, 420 U.S. at 344 n. 12, 95 S.Ct. 1013; *Illinois v. Somerville*, 410 U.S. 458, 471, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973); *United States v. Jorn*, 400 U.S. 470, 485, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971); *Downum v. United States*, 372 U.S. 734, 736, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963).

**4.** *See Arizona v. Washington*, —— U.S. ——, ——–——, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978); *Illinois v. Somerville*, 410 U.S. at 462, 93 S.Ct. 1066; *Gori v. United States*, 367 U.S. 364, 368, 81 S.Ct. 1523, 6 L.Ed.2d 901 (1961); *Wade v. Hunter*, 336 U.S. at 691, 69 S.Ct. 834.

ably determined that an impasse had been reached. Several factors lead us to this conclusion.

First, the order denying appellant's motion to dismiss mentions the possibility of deadlock only in passing. The jury did not expressly profess an irreconcilable conflict as to the guilt or innocence of appellant, *see Logan v. United States*, 144 U.S. at 297–98, 12 S.Ct. 617; *United States v. Gunter*, 546 F.2d 861, 865 (10th Cir. 1976); *Grogan v. United States*, 394 F.2d 287, 289–90 (5th Cir. 1967), *cert. denied*, 393 U.S. 830, 89 S.Ct. 97, 21 L.Ed.2d 100 (1968), and the court neither made a finding in this regard[5] nor indicated any proclivity to terminate the proceedings without further deliberation. More importantly, the foreman's statements to the court clearly establish that the jurors thought they were capable of returning a verdict.

This court has held that, in evaluating the propriety of a mistrial grounded upon a jury's inability to reach a verdict, "the trial judge's communications with the jurors are particularly significant." *United States v. Gordy*, 526 F.2d 631, 636 (5th Cir. 1976). Here the foreman not only expressly stated that the jury had been engaged in discussion just prior to being summoned to open court, but also requested additional time within which to decide the case.[6] Under these circumstances, the district court could not have reasonably determined that fur-

ther deliberations would have been futile, *see United States v. Gordy*, 526 F.2d at 637, and we decline to infer that the jury's initial expression of difficulty with the case played any role in the court's decision to direct a mistrial. *Cf. Downum v. United States*, 372 U.S. 734, 738, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963) (reasonable doubts must be resolved in favor of accused in double jeopardy cases).

### B. Juror Bias

The record before us shows that the mistrial was granted for one reason—the possibility of juror bias. To be sure, the district court's order states:

[T]he court inquired if the fact of the communications would in any way affect any juror or if there was any indication that the fact of the conversation had already affected any juror's judgment or opinion. The foreman answered in the affirmative and reconfirmed it when the court repeated the question. *The court at this time was of the opinion, while the jury was not questioned specifically in that regard, that such effect was operating to the prejudice of the defendant, i. e., that some jurors resented the conversation by the defendant.* [emphasis added]

The order does not explain how, without questioning a single juror, the court concluded that any resentment had developed.

---

**5.** We do not intend to intimate that an express finding of an inability to reach a verdict *is* necessary before it can be said that a manifest necessity for mistrial existed, since the record as a whole may show that such was the case. *See Arizona v. Washington*, —— U.S. at ——, 98 S.Ct. 824. But considering the state of the record here, the absence of any definitive finding of impasse is relevant to our attempt to discern whether the district court in fact relied upon this factor before dismissing the jury.

**6.** It is noteworthy that the Court of Appeals for the Fourth Circuit has concluded that the declaration of a mistrial in the face of a jury request for additional time to deliberate cannot be justified under the *Perez* standards. In *United States v. Lansdown*, 460 F.2d 164 (4th Cir. 1972), the district court recalled the jury after some 12 hours of deliberation. The foreman explained that the jury was "on the verge of a verdict" and requested an additional 10 minutes within which to decide the case.

Nevertheless, the court directed a mistrial, concluding that the jury had deliberated · long enough.

On appeal, the court concluded that there had been no manifest necessity for the mistrial and that reprosecution therefore was barred. The significance of the foreman's statements was explained as follows:

[T]he importance of the juror's request for 10 more minutes, and the foreman's declaration that the jury was on the verge of a verdict, is that they indicate[d] that the jury was not hopelessly deadlocked. Our disagreement with the district court is not over the fact that it refused to grant a specific amount of time for further deliberation, but that it declared a mistrial where the indications were that the jury was capable of reaching a verdict.

*Id.* at 169 n. 3.

■ The Supreme Court has followed the teachings of *Perez* in two cases involving the possibility of juror bias or prejudice. *See Thompson v. United States,* 155 U.S. 271, 15 S.Ct. 73, 39 L.Ed. 146 (1894); *Simmons v. United States,* 142 U.S. 148, 12 S.Ct. 171, 35 L.Ed. 968 (1891).[7] The *Simmons* Court concluded that reprosecution is permissible where, before declaring a mistrial, the district court justifiably concludes that it is "impossible for [the] jury, in considering the case, to act with the independence and freedom . . . requisite to a fair trial of the issue[s]." *Id.* at 155, 12 S.Ct. at 172. A finding that the jury cannot stand impartial between the government and the accused need not necessarily be predicated upon a particularized inquiry designed to reveal the actual extent and nature of any extant prejudice. *See Arizona v. Washington,* — U.S. at ——, 98 S.Ct. 824; *Wade v. Hunter,* 336 U.S. at 689, 69 S.Ct. 834 (dictum); *Whitfield v. Warden of Maryland House of Corrections,* 486 F.2d 1118, 1122 (4th Cir. 1973), *cert. denied,* 419 U.S. 876, 95 S.Ct. 139, 42 L.Ed.2d 116 (1974); *United States v. Pridgeon,* 462 F.2d 1094, 1095 (5th Cir. 1972). But when, as here, the court undertakes to discover the true extent of any impediment to an impartial verdict, it cannot simply ignore what it finds or fail to clarify any doubt engendered by its inquiry.

■ The colloquy between the district court and the foreman here leaves us with no doubt that the court inaccurately assessed the import of the jury's note and the foreman's explanation thereof. The court, quite obviously, felt the foreman had acknowledged that one or more jurors had in some way been prejudiced by exposure to the events detailed in the jury's note. On two separate occasions, however, the foreman explained that the jurors simply felt that the incidents "should be brought to light." At no time was he requested to apprise the court of the circumstances surrounding his contact with appellant or of what description of the occurrence had been related to the remaining jurors. Under all of the circumstances, we cannot hold that the district court "could have reasonably determined that the [jurors or any of them] might have had a bias or prejudice against" the appellant or the government. *Jones v. Anderson,* 404 F.Supp. 182, 186 (S.D.Ga. 1974), *aff'd per curiam,* 522 F.2d 181 (5th Cir. 1975).[8]

The district court, of course, is in the best position to determine whether or not an impartial verdict can be reached. But even according this initial determination the "special respect" to which it is entitled, *see Arizona v. Washington,* — U.S. at ——, 98 S.Ct. 824, we find that the court in this case abused its discretion in declaring a mistrial. In *United States v. Jorn,* 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971), the Court stated:

> In the absence of . . . a motion [for mistrial on behalf of the accused], the *Perez* doctrine of manifest necessity stands as a command to trial judges not to foreclose the defendant's option [to proceed to verdict] until *a scrupulous exercise of judicial discretion* leads to the conclusion that the ends of justice would not be served by a continuation of the proceedings.

> Nor is it particularly significant that, as stated in the district court's order, the mistrial was not granted "for the purpose of harassing the defendant or causing him any additional inconvenience."
>> If [the] right to go to a particular tribunal is valued, it is because, independent of the threat of bad faith conduct by judge or prosecutor, the defendant has a significant interest in the decision whether or not to take the case from the jury when circumstances occur which might be thought to warrant a declaration of mistrial.

> *Id.* at 485, 91 S.Ct. at 557.

---

7. *See generally Illinois v. Somerville,* 410 U.S. at 464, 93 S.Ct. 1066 (dictum that mistrial properly declared where jury cannot reach impartial verdict); *Wade v. Hunter,* 336 U.S. at 689, 69 S.Ct. 834.

8. The district court's unsubstantiated observation that "some jurors resented the conversation by the defendant" is of no moment. Although the trial judge's beneficent motive was considered significant in *Gori v. United States,* 367 U.S. 364, 81 S.Ct. 1523, 6 L.Ed.2d 901 (1961), it now can be accorded little or no weight. *United States v. Jorn,* 400 U.S. at 483, 91 S.Ct. 547.

*Id.* at 485, 91 S.Ct. at 557 (emphasis added); see *Smith v. Mississippi,* 478 F.2d 88, 96 (5th Cir.), *cert. denied,* 414 U.S. 1113, 94 S.Ct. 844, 38 L.Ed.2d 740 (1975).

Appellant's trial was terminated and the jury dismissed after only a brief and confusing exchange between the court and jury. The court did not give counsel for either side an opportunity to address the possibility of bias or the need for a mistrial.[9] No alternatives to a mistrial were considered.[10] Indeed, "had . . . the defendant [been disposed] to object to the discharge of the jury, there would have been no opportunity to do so." *United States v. Jorn,* 400 U.S. at 487, 91 S.Ct. at 558. The record reflects a total lack of awareness of the double-jeopardy consequences of the court's action and of the manifest necessity standard. Moreover, it shows a crucial failure to consider the appellant's protected interest in having the trial concluded in a single proceeding. Under these circumstances, the very basis for appellate deference to the court's determination that a mistrial was required is diminished beyond the point of significance. *See Arizona v. Washington,* —— U.S. at ——– —— and n. 28, 98 S.Ct. 824.

We think it abundantly plain that the district court abused the discretion entrusted it by declaring a mistrial. We therefore hold that a second prosecution of appellant is constitutionally barred and that the court erred in refusing to dismiss the indictment.

REVERSED and RENDERED.

9. The Supreme Court reaffirmed *Jorn*'s requirement that the district court not act irrationally or irresponsibly in *Arizona v. Washington, supra.* In assessing the trial judge's declaration of a mistrial there, the Court was able to conclude:

> The trial judge did not act precipitately in response to the prosecutor's request for a mistrial. [H]e gave both defense counsel and the prosecutor full opportunity to explain their positions on the propriety of a mistrial. —— U.S. at ——, 98 S.Ct. at 835. A similar conclusion is not possible in this case.

10. The failure to consider less severe alternatives to mistrial was determinative in *Jorn,* 400 U.S. at 487, 91 S.Ct. 547, and has been assigned significance in our own decisions. *See United States v. Spinella,* 506 F.2d 426, 432 (5th Cir. 1975); *United States v. Kin Ping Cheung,* 485

F.2d 689, 691 (5th Cir. 1973). *But cf. United States v. Pridgeon,* 462 F.2d 1094, 1095 (5th Cir. 1972) (not always error not to "adopt" a less drastic course of action).

We recognize that the Supreme Court recently implied that explicit consideration of alternatives is not constitutionally mandated where "the record [otherwise] provides sufficient justification" for the mistrial. *Arizona v. Washington,* —— U.S. at ——, 98 S.Ct. [824] at 836. However, in light of the sparse record here, we are not precluded from considering this factor in our review of the district court's exercise of discretion. Although not necessarily determinative, the failure to consider alternatives does indicate an inadequate concern for the severe consequences of ordering a mistrial without the accused's consent.