Clifford GROOMS, Petitioner-Appellant,

v.

Louie L. WAINWRIGHT, etc., Respondent-Appellee.

No. 79–1372.

United States Court of Appeals, Fifth Circuit.

Jan. 25, 1980.

Norman L. Hull, Orlando, Fla. (Court-appointed), for petitioner-appellant.

Jim Smith, Atty. Gen., Tallahassee, Fla., Max Rudmann, Asst. Atty. Gen., West Palm Beach, Fla., for respondent-appellee.

Before THORNBERRY, GEE .and HATCHETT, Circuit Judges.

THORNBERRY, Circuit Judge:

In this habeas corpus case we must decide whether the state violated appellant's right against double jeopardy when the state retried him after the judge declared a mistrial without interrogating the jury, and whether appellant was denied his due process right to an impartial jury in light of a remark allegedly made by a juror during the second trial. Because we find that appellant's constitutional rights were not violated, we affirm the denial of appellant's habeas corpus petition.

## I. Facts.

Appellant Clifford Grooms was charged in Florida state court with armed robbery of a fried chicken restaurant on August 26, 1974. At trial Grooms admitted that he committed the robbery, but contended that he was coerced at gunpoint by his friend John. Grooms testified that while he and John were eating in the restaurant, John pressed a snub-nose 0.38 pistol against Groom's stomach under the table. John then allegedly drew a silver-toothed revolver from inside his pants and handed it to Grooms. Grooms testified that he looked down the barrel of the silver-toothed revolver and saw that it had no bullets. Because John allegedly threatened to shoot Grooms if he refused to participate, Grooms walked with John up to the cashier, threatened her with the gun, and robbed the restaurant.

At the trial in December, 1974, in Florida state court, none of the witnesses who were present in the restaurant testified that they saw John threaten Grooms with a gun. While the jury was deliberating after the close of the case, the trial judge learned that, upon the request of a juror, the bailiff had permitted his snub-nose 0.38 service pistol to be examined by the jury in the jury room. The pistol had not been introduced into evidence. The judge summoned the jury into the courtroom. After a short bench conference with counsel, the judge asked the bailiff a few questions about the pistol and what happened when he gave it to the jurors. The judge declared that the make, shape, and size of the pistol were a very critical part of the testimony presented at trial, and that the jurors' examination of the bailiff's pistol made the need for a mistrial "manifest and urgent and absolute." The judge declared a mistrial, then asked both counsel if they had anything else to present to the court. The prosecutor said he had nothing, and the defense counsel was silent.

Grooms filed for a writ of prohibition against a second trial, but the state district court of appeals denied the writ, and the Florida Supreme Court denied certiorari.

In September, 1975, Grooms was retried in state court and found guilty. After the jury rendered its verdict, Grooms moved for a new trial on the ground that, on the second day of the four-day trial, Grooms' mother overheard a statement by one female juror to four others in the restroom. The juror allegedly said "As far as I'm concerned, [from] what I heard already he's guilty." The trial judge held a hearing at which Grooms' mother testified with defense counsel present. The prosecution did not appear at the hearing. Although the judge indicated that he might hold a second hearing at which the state could cross-examine Grooms' mother, no second hearing was called. Defense counsel requested the judge to interrogate the jurors about the alleged comment. The judge said he would consider such an interrogation, but later he denied the motion for a new trial without holding the interrogation.

Grooms appealed his conviction to the state district court of appeals, who affirmed per curiam. In June, 1977, Grooms filed for a writ of habeas corpus in federal district court. The judge denied both of Grooms' claims on the merits, from which decision Grooms now appeals.

## II. Double Jeopardy.

Grooms properly exhausted his state remedies on his double jeopardy claim. His writ of prohibition and appeal from the conviction both raised this claim, and were denied by the state appellate courts.

In *Arizona v. Washington*, 434 U.S. 497, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978), the Supreme Court discussed the standards for the declaration of a mistrial so that the defendant's right against double jeopardy would not be violated upon the subsequent retrial. In *Washington* the state court judge declared a mistrial in a murder case because the defense counsel had made a statement before the jury about prosecutorial misconduct in suppressing evidence at a previous trial. In making this decision the judge heard arguments from counsel, deliberated overnight, and expressed his concern about the possibility that a mistrial order would preclude another trial because it

would place the defendant in double jeopardy. 434 U.S. at 500–01, 98 S.Ct. 824. The judge did not interrogate the jurors, mention that he had considered alternatives to a mistrial, or expressly find a "manifest necessity" for a mistrial. *Id.* After Washington's appeal from the mistrial order was denied by the Arizona Supreme Court, the federal district court granted habeas corpus relief because the state judge had made no finding of "manifest necessity." The Court of Appeals affirmed.

The Supreme Court reversed the grant of the writ. The Court held that the fifth amendment does not require the judge to make an express finding of "manifest necessity" before declaring a mistrial if the record as a whole shows such a manifest necessity. 434 U.S. at 516–17, 98 S.Ct. 824. The Court observed that, in declaring the mistrial, the judge had not acted precipitately, he expressed concern about the double jeopardy problem, and he heard arguments from counsel. 434 U.S. at 515–16, 98 S.Ct. 824. Even though other trial judges might have used cautionary instructions or other measures short of a mistrial to correct prejudice to the jury, a judge need not expressly consider these alternatives to satisfy the fifth amendment. 434 U.S. at 511, 98 S.Ct. 824. Because the trial judge is familiar with the events at trial and the factors leading to the mistrial order, appellate courts should give the judge's mistrial order the "highest degree of respect," *id.*, and commit the mistrial decision to the judge's "sound discretion." 434 U.S. at 514, 98 S.Ct. 824.

The trial judge's declaration of a mistrial in Grooms' case satisfies the *Arizona v. Washington* standards. Unlike the judge in *Washington*, the judge below made an express finding that the need for a mistrial was "manifest and urgent and absolute" because the make, shape, and size of the pistol were a critical factor in determining whether Grooms was actually coerced by John. As in *Washington*, the judge's conclusion is amply supported by the record. Like the judge in *Washington*, the judge below displayed awareness of the double

jeopardy problem when he characterized the need for a mistrial as "manifest" and "absolute," language which is typical of double jeopardy decisions. The judge gave counsel an opportunity to object at the bench conference and in open court after he declared the mistrial. Although the judge below did not delay his decision overnight, as did the judge in *Washington*, he still did not act precipitately in light of his particular findings and the interrogation of the bailiff. Neither the judge in *Washington* nor the judge below interrogated the jurors.

The judge's decision below also satisfies the standards for a mistrial in *United States v. Starling*, 571 F.2d 934 (5th Cir. 1978). In *Starling* the trial judge ordered a mistrial after a brief and confusing discussion with the jury foreman suggested that some jurors might have been influenced because the defendant had talked to one juror and attempted to talk with others. Even in light of *Washington*, we held that the judge abused his discretion when he declared a mistrial under those circumstances without interrogating the jurors to ascertain to what degree the defendant's actions actually influenced their decisionmaking. 571 F.2d at 939–41.

Essential to our decision in *Starling* were several factors that did not appear in *Washington* or in this case. In *Starling* the evidence in the record was very weak and ambiguous to show jury prejudice. The judge did not fully interrogate the jury foreman about the effect of the defendant's acts; he cut off the foreman's response in mid-sentence and prevented the foreman from explaining his ambiguous answer. The judge in *Starling* gave no indication that he was even aware of the double jeopardy problem, and he gave counsel no opportunity to object at the bench or in open court. In contrast to the judge's actions in *Starling*, the judge's decision in this case is amply supported by the record. Moreover, he interrogated the bailiff fully, recognized the double jeopardy problem, and gave counsel an opportunity to respond. Even though, acting independently, we might have chosen a corrective measure less drastic than a mistrial, on appeal we must defer to the discretion of the trial judge.

### III. Jury Bias.

Grooms did not properly exhaust state remedies with regard to his due process claim about jury bias. Because the district judge below nevertheless decided this issue on the merits without objection from the state, we will reach the merits on appeal under the authority of *Galtieri v. Wainwright*, 582 F.2d 348, 362 (5th Cir. 1978) (en banc) and *Messelt v. Alabama*, 595 F.2d 247, 250 (5th Cir. 1979).

On the merits Grooms contends that the judge erred when he failed to interrogate the jurors about the alleged act of misconduct, and that Grooms' due process rights were violated because the alleged statement shows that the jury was biased against him.

The judge's decision whether to interrogate the jury about juror misconduct is within his sound discretion, especially when the alleged prejudice results from statements made by the jurors themselves, and not from media publicity or other outside influences. *Compare United States v. Chiantese*, 582 F.2d 974, 978–80 (5th Cir. 1978), *cert. denied*, 441 U.S. 922, 99 S.Ct. 2030, 60 L.Ed.2d 395 (1979) (no juror interrogation necessary to investigate misconduct resulting from jurors' statements) *with United States v. Herring*, 568 F.2d 1099, 1103–06 (5th Cir. 1978) (judge must interrogate jurors to determine whether jurors were prejudiced by their exposure to excessive media publicity).

In this case the judge acted well within his discretion when he denied Grooms' motion for a new trial without interrogating the jury. Grooms' only evidence about misconduct was his mother's statement that she heard a juror remark at the close of the prosecution's case that "As far as I'm concerned, [from] what I heard already he's guilty." The judge interrogated the mother at a hearing which defense counsel attended. After hearing the mother's testimony and observing her demeanor, the judge was in a good position to evaluate her credibility. The mother's credibility seems

weak at the outset because she delayed over a week to report the incident until after the jury returned a verdict against her son. Moreover, a juror's statement that "[from] what I heard already he's guilty" at the conclusion of the prosecutor's case and before the defendant presents any evidence does not reflect serious prejudice, but only an objective evaluation of the evidence presented to date in the trial. For these reasons, the judge did not abuse his discretion or violate Grooms' due process rights when he denied Grooms' motion.

\* \* \* \* \* \*

Because we find that the state court judge did not err when he declared a mistrial or when he denied appellant's motion for a new trial, we affirm the denial of appellant's petition for a writ of habeas corpus in the court below.

AFFIRMED.