**Woodrow BARKSDALE, II, Petitioner-Appellant,**

**v.**

**Frank BLACKBURN, Warden, Respondent-Appellee.**

**No. 80–3782**

**Summary Calendar.**

United States Court of Appeals, Fifth Circuit.

March 8, 1982.

Rehearing Denied April 1, 1982.

Certiorari Denied June 7, 1982.

See 102 S.Ct. 2912.

---

Woodrow Barksdale, II, pro se.

J. Kevin McNary, Asst. Dist. Atty., New Orleans, La., for respondent-appellee.

Before RUBIN, SAM JOHNSON and GARWOOD, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

A Louisiana prisoner serving an eight-year sentence in the state penitentiary at Angola for simple burglary enhanced by two prior felony convictions seeks habeas corpus. We dismissed the appeal from the district court's denial of the petition as not being timely filed, *Barksdale v. Blackburn,* 647 F.2d 630 (5th Cir. 1981). The United States Supreme Court, however, vacated that dismissal and remanded the case for our consideration. —— U.S. ——, 102 S.Ct. 962, 71 L.Ed.2d 106 (1981). We hold that our dismissal of the action as not timely filed was improper because the thirty-day appeal period runs from the "date of entry of the judgment or order appealed from,"

Fed.R.App.P. 4(a)(1), and not from the date of the filing of the order. Accordingly, we now consider the merits of the claims asserted by the petitioner in this appeal from the district court's denial of habeas corpus relief.

Woodrow Barksdale is incarcerated in the Louisiana State Penitentiary at Angola for the crime of simple burglary, committed on April 23, 1976. On February 11, 1977, Barksdale entered a plea of guilty. He was adjudicated to be a habitual felony offender on February 17, 1977, and was sentenced to eight years. Two prior felony convictions in addition to Barksdale's plea of guilty to the 1976 simple burglary charge were considered by the state judge in adjudicating Barksdale a habitual offender: simple burglary convictions in 1971 and 1974. Barksdale did not take a direct appeal, but later filed habeas corpus petitions in the Louisiana state court and appealed the denial of those petitions to the Louisiana Supreme Court, which also denied relief. He then filed this habeas corpus petition in federal district court.

█ The state conceded in a memorandum filed in the district court that the state court petitions alleged the same grounds for relief as those asserted in the petition before the federal district court. Because exhaustion of state remedies is not a matter of subject matter jurisdiction, "failure by the state to raise lack of exhaustion at the district court level ordinarily constitutes a

waiver, and the court of appeals may decide the issue on the merits." *Hopkins v. Jarvis*, 648 F.2d 981, 983 n.2 (5th Cir. 1981). *Accord, Bufalino v. Reno*, 613 F.2d 568, 570 n.5 (5th Cir. 1980); *Grooms v. Wainwright*, 610 F.2d 344, 347 (5th Cir.), *cert. denied*, 445 U.S. 953, 100 S.Ct. 1605, 63 L.Ed.2d 789 (1980); *Mayberry v. Davis*, 608 F.2d 1070, 1072 (5th Cir. 1977); *Messelt v. Alabama*, 595 F.2d 247, 249–50 (5th Cir. 1979). Therefore, we review the claims asserted in the district court. When the state has raised the exhaustion issue, *Rose v. Lundy*, —— U.S. ——, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), provides the proper mode of analysis.[1]

## I.

Barksdale contends that his prior conviction of simple burglary on June 6, 1971, used to enhance the penalty for the 1976 burglary under the multiple offender statute, was based on a guilty plea that was not knowingly and intelligently entered in accordance with *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). In the colloquy at the time the plea was entered, the judge did not specifically inform Barksdale that, by pleading guilty, he was forfeiting his right to confront his accusers and his privilege against self-incrimination.[2]

*Boykin* held that "[i]t was error, plain on the face of the record, for the trial judge to

---

1. *Rose* held that, when a mixed habeas corpus petition, containing claims that have been exhausted in state court proceedings as well as unexhausted claims, is presented to a federal district court, that court should dismiss the entire petition without prejudice so that the petitioner may exhaust all claims in state court before the federal district court begins collateral review proceedings. *Cf. Galtiere v. Wainwright*, 582 F.2d 348 (5th Cir. 1978) (en banc). (If the district court nevertheless reaches the merits of any exhausted claims, *Galtieri* held, the court of appeals may review that determination. *Bufalino v. Reno*, 613 F.2d 568, 571 (5th Cir. 1980), cautions that the rationale of *Galtieri* should not be extended to allow federal appellate courts to review a district court's habeas corpus ruling if none of the claims presented to the district court were exhausted in prior state proceedings).

2. The following exchange occurred on June 6, 1971, between Barksdale and the state court judge:

BY THE COURT:

Alright. You are entering those pleas of your own free will without any pressure of threats or promises on you to plead guilty?

BY THE DEFENDANT:

Yes, Sir.

BY THE COURT:

Do you understand that by entering the pleas of guilty you give up your right to a trial by jury and to appeal to a higher court should the jury have convicted you? Do you understand that?

BY THE DEFENDANT:

Yes, Sir.

accept petitioner's guilty plea without an affirmative showing that it was intelligent and voluntary." 395 U.S. at 242, 89 S.Ct. at 1711, 23 L.Ed.2d at 279. The court noted,

Several federal constitutional rights are involved in a waiver that takes place when a plea of guilty is entered in a state criminal trial. First, is the privilege against compulsory self-incrimination guaranteed by the Fifth Amendment and applicable to the States by reason of the Fourteenth.... Second, is the right to trial by jury.... Third, is the right to confront one's accusers.... We cannot presume a waiver of these three important federal rights from a silent record.

395 U.S. at 243, 89 S.Ct. at 1712, 23 L.Ed.2d at 279 (footnote omitted).

*Boykin* did not, however, *require* that the judge explicitly inform the defendant of each of these three rights before accepting a guilty plea. *Brown v. Jernigan*, 622 F.2d 914, 915 (5th Cir.) ("Although by pleading guilty the defendant waives the right to a jury trial, the privilege against self-incrimination, and the right of confrontation, neither the Constitution nor any rule of criminal procedure requires express articulation and specific waiver of these rights before a guilty plea may be accepted."), *cert. denied*, 449 U.S. 958, 101 S.Ct. 368, 66 L.Ed.2d 224 (1980).

The Louisiana Supreme Court has interpreted *Boykin*, however, to require that the accused be informed of, and make a knowing waiver of, his right to jury trial, his right to confront his accusers, and his privilege against self-incrimination. *State ex rel. Jackson v. Henderson*, 260 La. 90, 255 So.2d 85, 90 (1971). Although *Jackson* did not require the trial court to conduct such an interrogation or make a record of it, it held that an evidentiary hearing would be required if a post-conviction attack was made on the voluntariness of the guilty plea because the record did not reflect a waiver of these rights. *Id.* *State ex rel. LeBlanc*

*v. Henderson*, 261 La. 315, 259 So.2d 557 (1972), held *Jackson* applicable only to guilty pleas to felonies in Louisiana state courts made after December 8, 1971, the date *Jackson* became final. As to guilty pleas entered before December 8, 1971, *State v. Holden*, 375 So.2d 1372, 1376 (1979), requires only that the state "prove the conviction by a plea of guilty with representation by counsel." *Accord, State v. Jackson*, 389 So.2d 69, 70 (1980); *State v. Vincent*, 387 So.2d 1097, 1103 (1980).

■ Barksdale was represented by counsel on June 6, 1971, when he plead guilty to the simple burglary. Therefore, the trial judge's failure personally to inform the defendant that he was waiving the three rights identified in *Boykin* transgresses neither federal constitutional law nor the requirements of Louisiana law. Further, from our review of the record, we are convinced that Barksdale's guilty plea in 1971 was a knowing and intelligent waiver of his federal constitutional rights.

## II.

Barksdale next argues that La.Rev.Stat. Ann. § 15:571.3(C) [3] denying habitual offenders diminution of sentence for good time is an unconstitutional ex post facto law because, when Barksdale was convicted of the first offense underlying his adjudication as a habitual offender, habitual offenders were eligible for good time credit. The Louisiana Supreme Court has interpreted this amendment to the good time provision in such a fashion that it does not operate ex post facto, and, on this basis, has sustained its constitutionality. In *State ex rel. Bickman v. Dees*, 367 So.2d 283, 288 (La.1978), the Court held that, if the felony was committed between September 16, 1975, and September 9, 1977, the accused remains eligible for good time unless specifically denied such eligibility by the sentencing judge, even though he had been convicted

3. The statute provides in part that diminution of sentence will not be allowed if the "inmate's last conviction for purposes of the Habitual Offender Law, was for a crime: (a) committed during the period beginning September 16, 1975, through September 9, 1977, inclusive of both dates, and the sentence of the court specifically denies eligibility for diminution of sentence."

one or more times of offenses listed in La.Rev.Stat.Ann. § 15:571.3(C) and was sentenced as a habitual offender. The felony triggering Barksdale's adjudication as a habitual offender took place on April 23, 1976. Barksdale was eligible for good time credit, but the sentencing judge specifically ruled that the "defendant . . . shall not be entitled to diminution of sentence for good behavior and the Department of Corrections is prohibited from rendering to the defendant in this matter good time under LSA R.S. 15:571, et seq."

█ We agree with the Louisiana Supreme Court's determination that, as thus interpreted and applied to Barksdale, the statute is constitutional. The United States Supreme Court recently reiterated the "two critical elements [that] must be present for a criminal or penal law to be *ex post facto* : it must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it." *Weaver v. Graham*, 450 U.S. 24, 29, 101 S.Ct. 960, 964, 67 L.Ed.2d 17, 23 (1981) (footnotes omitted) (holding that a Florida law reducing the amount of good time credit available to a prisoner whose crime was committed *before* the effective date of the law violated the ex post facto clause). The statute denying Barksdale good time diminution of his sentence for the 1976 burglary was enacted before the 1976 burglary took place and hence is not retrospective[4] and thus violative of the federal and state constitutional bans against ex post facto laws.

When Barksdale committed the robbery in 1976, the 1975 statutory changes were already in effect. Barksdale's situation must, therefore, be distinguished from that of the petitioner in *Beebe v. Phelps*, 650 F.2d 774 (5th Cir. 1981), in which the petitioner was subjected, under a new statute, to forfeiture of good time earned before the statute was enacted because of a later parole violation. Barksdale's 1976 offense was committed *after* the statute became effective. The denial of good time applies only to the sentence Barksdale must serve for the 1976 burglary and has no effect whatsoever on his punishment for the offenses committed in 1971 and 1974.

### III.

We find Barksdale's final contention also without merit. Barksdale alleges that the state court improperly considered a misdemeanor marijuana conviction to be a felony in assessing his status as a multiple felony offender. Although there was some confusion at the habitual offender hearing as to whether possession of marijuana was a felony in 1971, this conviction was apparently not relied on by the judge in adjudicating Barksdale a habitual offender. The judge read the multiple bill at the hearing on February 17, 1977.

BY THE COURT:

> Well, let me read it, now. The first, or the second paragraph, I guess it is, the bill of information, Mr. Brandt, you allege that he was convicted of possession of narcotics. You don't say what kind. And, that on the 9th day of June, 1971, the accused pled guilty as charged and was sentenced to serve one year in the Orleans Parish Prison.

BY MR. BRANDT [Assistant District Attorney]:

> That was a plea to a marijuana charge which was a felony at that time.

---

4. La.Rev.Stat.Ann. § 15:571.3 describes the history and source of the law. That history, repeated below, clearly shows that the statute was amended in 1975, prior to Barksdale's 1976 burglary, to prohibit good time for prisoners sentenced as habitual offenders.

> Acts 1975, No. 478, enacted a subsec. D. . . . [which] provided that no prisoner convicted of two or more offenses against the person and sentenced as an habitual offender under R.S. 15:529.1 was to be entitled to diminution or commutation of sentence for good behav-

ior under this Part, if so ordered by the sentencing court. The subsection further provided that it was to apply only to persons convicted and sentenced as habitual offenders after September 15, 1975.

Acts 1975, No. 727, § 1 added subsec. C, prohibiting the awarding of good time to certain habitual offenders. Section 3 of Acts 1975, No. 727 provided as follows:

"The provisions of this act shall apply only to persons convicted under the Habitual Offender Law after September 15, 1975."

BY THE COURT:

It was a felony in '71?

BY MR. BRANDT:

Yes, sir. However, that paragraph is duplicitous when taken in connection with paragraph 2, which alleges a burglary. I found in my experience in multiple bills occasionally it's hard to prove a multiple bill where you have two pleas entered simultaneously. Sometimes the Sheriff's Office or the Police Department will not make an entry on the arrest register for all of the pleas that are entered and will only enter the information as to one of the pleas on the back of the arrest register. So, for that reason, I placed or made two paragraphs as to the same plea on the same day. Consequently, *this bill of information charges the defendant with being a triple offender rather than as it would appear from the face of quadruple offender.*

(Emphasis supplied.) Thus, of the two convictions in 1971, one for possession of narcotics, the other for burglary, only one was used to establish that Barksdale was a habitual felon, and the judge sentenced Barksdale as only a three-time felon, rather than a four-time felon.

■ The sentencing judge has wide discretion in imposing a sentence and "may properly consider evidence of other offenses in determination of sentence where there is a showing that the defendant did in fact perpetrate the other offense." *State v. Pierson*, 296 So.2d 324, 325 (1974). *Accord, State v. Hatter*, 338 So.2d 100, 107 (1976). A judge may even consider "a defendant's past criminal conduct—though there have been no convictions—in passing sentence judgment." *Horowitz v. Henderson*, 514 F.2d 740, 741 n.1 (5th Cir. 1975). Thus, the marijuana conviction could also be considered by the judge in sentencing Barksdale. Further, in a later habeas corpus proceeding, the sentencing judge in this case acknowledged that the conviction for possession of marijuana was a misdemeanor in 1971 but reaffirmed the sentence of eight years. Barksdale does not complain that

the marijuana conviction did not take place or that the conviction was illegal. In the absence of such claims, we afford the sentencing judge wide discretion in determining the length of sentence and allow him to consider evidence of other convictions and other criminal activity in assessing the defendant's punishment.

For the reasons stated above, we AFFIRM the district court's denial of habeas corpus relief.

AFFIRMED.