David E. PIPER

v.

Everett I. PERRIN, Warden, New
Hampshire State Prison.

Civ. No. 83–29–D.

United States District Court,
D. New Hampshire.

Feb. 16, 1983.

Arpiar Saunders, Concord, N.H., for
plaintiff.

Marc R. Scheer, Asst. Atty. Gen., Concord, N.H., for defendant.

## ORDER

DEVINE, Chief Judge.

David E. Piper petitions this Court for a writ of habeas corpus, 28 U.S.C. § 2254, claiming as ground therefor that Warden Perrin's decision to alter the method by which statutory "good conduct" credits are calculated against a prisoner's sentence constitutes, as applied to Piper, an *ex post facto* law. Petitioner has exhausted his remedies in state court, and the petition is properly before the Court for review on the merits. *See Preiser v. Rodriguez,* 411 U.S. 475, 487, 93 S.Ct. 1827, 1835, 36 L.Ed.2d 439 (1973).[1]

---

1. At the time the answer was filed, January 31, 1983, both judges of this court were without the jurisdiction. The undersigned returned on February 8, 1983. On the same date petitioner filed his brief and motion for summary judgment. Because of the nature of the claim presented, the Court requested that the Attorney General accelerate the filing of responsive memoranda. Per the Court's request, defendant filed his memorandum and cross motion on February 14, 1983. The careful and thoughtful

The relevant facts are undisputed. Petitioner is currently serving a five-to-ten-year prison term for a crime committed in 1978. He was convicted and sentenced in 1980. Warden Perrin changed the manner in which he calculated good conduct credits in 1979, and applied the new formula prospectively to all persons sentenced after August 22, 1979. The statute governing good time, N.H. RSA 651:55–b (Supp.1981) (amended effective August 22, 1979),[2] provides that a prisoner may by good conduct earn ninety days per year of statutory good time, and may earn an additional five days per month of meritorious service credits, at the discretion of the warden, for exemplary conduct. It is admitted that petitioner possesses an excellent prison record. Answer, ¶ 1(c)(ii)(e).

At the time of petitioner's offense in 1978, a prisoner's parole eligibility date was determined in part by deducting ninety days per year of statutory good time for each full year of a prisoner's minimum sentence. In addition, the Warden deducted five days per month for meritorious service from the term of the prisoner's minimum sentence, for a total of sixty days (5 days × 12 months) per year. Thus, up to 150 days per year were deducted from a prisoner's sentence.

In 1979 the Warden determined that this method of calculating good time was an incorrect application of N.H. RSA 651:55–b II. Under the revised system of calculation currently applied to those sentenced after August 22, 1979, the Warden still credits each prisoner with ninety days per year of statutory good time. However, the monthly meritorious service credits are now calculated only for time actually served, not the term of the prisoner's minimum sentence. Thus a prisoner cannot earn meritorious service credits for the ninety-day (3-month) period of time for which he has earned statutory good time credits. In addition, because the Warden calculates the meritorious service credits on a month-to-month basis as they are "earned", additional days are lost in the mathematical calculation. All told, under the revised system, a prisoner is precluded from earning approximately twenty-three days per year of meritorious service credits that could have been earned under the previous system.[3]

Under the system in effect on the date of his offense, petitioner would have earned 300 days of meritorious service time credits (60 days per year × 5 years) toward his minimum sentence of five years, as well as 450 days per year (90 days × 5 years) of statutory good time credits. Under the cur-

briefs of the parties have been greatly appreciated by the Court.

2. The statute provides in pertinent part:
   *651:55–b Credits for Good Conduct.* Any prisoner may by good conduct and obedience to the rules of said prison earn credits against his sentence as follows:
   I. Ninety days for each full year of the minimum term of his sentence prorated for a part of any such year, [to be applied only against the minimum term of his sentence;]
   II. In addition to the foregoing, 5 days for each month of meritorious service, which may be granted in the discretion of the warden for exemplary conduct. [Credits for meritorious service shall be applied against both the minimum and maximum terms of the sentence.]
   The bracketed provisions were added by the 1979 amendments, which also deleted "both the minimum and maximum terms" from the first paragraph. Both petitioner and defendant take the position that the amendments themselves would not alter the manner in which

petitioner's good conduct credits were calculated. Only the Warden's actions are at issue here. The statute was once again amended in 1982 in a manner not bearing on the present litigation.

3. Although the revised method is designed to credit a prisoner with meritorious service time on a monthly basis as "earned", all potential meritorious service time is apparently still credited to a prisoner at the commencement of his term of sentence for purposes of determining a "projected Parole Eligibility Date". *See* Appendix 1 to Petition for Writ of Habeas Corpus and Petition for Declaratory Judgment in Merrimack County Superior Court. Whether or not the five days per month of meritorious service time is granted automatically, or whether the Warden in fact exercises some discretion in granting the credits, is not an issue that requires resolution here. In either event, petitioner is still precluded from ever being able to earn the same amount of credits he could have earned under the system previously in effect.

rent system, he is still credited with 450 days per year of statutory good time, but receives only 187 days of meritorious service time. It is admitted that petitioner would have been parole eligible on November 28, 1982, under the calculation system in effect on the date he committed the offense. Answer, ¶ 1(c)(ii)(d). Under the present system, his parole eligibility date is March 23, 1983.

Petitioner originally sought relief by filing a petition for writ of habeas corpus in the Merrimack County (New Hampshire) Superior Court. Relying on *Weaver v. Graham,* 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981), petitioner claimed that the Warden's new method of calculating good time was in violation of the prohibition against *ex post facto* laws.[4] Petitioner further claimed a denial of due process and equal protection. The Superior Court dismissed the petition on September 21, 1982, finding that defendant was entitled to judgment as a matter of law. No findings and rulings were made. On November 30, 1982, the New Hampshire Supreme Court summarily affirmed, relying on Rule 25 of the New Hampshire Supreme Court Rules, which authorizes that Court to *sua sponte* dismiss a case without briefing or oral argument if the Court is without jurisdiction or if no substantial question is presented.[5]

In *Weaver v. Graham, supra,* the United States Supreme Court held that a Florida statute which reduced the amount of "gain time" for good conduct which could be deducted from a prisoner's sentence constituted an *ex post facto* law when applied to a prisoner who was convicted of a crime committed before the enactment of the statute. Affirming its previous precedents, *see Warden v. Marrero,* 417 U.S. 653, 94 S.Ct. 2532, 41 L.Ed.2d 383 (1974); *Greenfield v. Scafati,* 277 F.Supp. 644 (D.Mass.1967) (three-judge court) (Aldrich, J.), *aff'd per curiam,* 390 U.S. 713, 88 S.Ct. 1409, 20 L.Ed.2d 250 (1968), the Court held that a

statute which "alters penal provisions accorded by the grace of the legislature, ... violates the Clause if it is both retrospective and more onerous than the law in effect on the date of the offense". *Weaver v. Graham, supra,* 450 U.S. at 30–31, 101 S.Ct. at 965 (footnote omitted). The *ex post facto* prohibition thus applies even in those instances where there is no "vested right" enforceable under the Due Process Clause. *Id.* at 29–30, 101 S.Ct. at 964–965.

■ The current method of computation is both retrospective and more onerous. A law is retrospective if it "changes the consequences of acts completed before its effective date". *Id.* at 31, 101 S.Ct. at 965; *see Dobbert v. Florida,* 432 U.S. 282, 292, 97 S.Ct. 2290, 2297, 53 L.Ed.2d 344 (1977); *Warden v. Marrero, supra; Calder v. Bull,* 3 U.S. (3 Dall.) 386, 390, 1 L.Ed. 648 (1798). The new method of computation is retrospective since it reaches back to crimes committed before its adoption. It is more onerous because it "changes the punishment, and inflicts a greater punishment, than the law affixed to the crime when committed", *Calder v. Bull, supra* at 390, by adding nearly four months to petitioner's sentence. The present method of calculation would clearly violate the *ex post facto* clause if it came about as the result of legislative action, as in *Weaver v. Graham, supra,* since petitioner would be entitled to have his good time credits calculated according to the law in effect at the time of the crime, not the more onerous system in effect at the time of sentence. *See Welsh v. Mizell,* 668 F.2d 328 (7th Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 235, 74 L.Ed.2d 186 (1982) (adverse change in parole criteria cannot be applied to Illinois offender whose crime was committed but who was sentenced after the change); *Spradling v. Maynard,* 527 F.Supp. 398 (W.D.Okl.1981) (state statute adversely changing computation of good time cannot be applied to prisoner who committed crime before but was

---

4. U.S. Const., art. I, § 10, cl. 1. Congress is also barred from passing *ex post facto* laws. U.S. Const., art. I, § 9, cl. 3.

5. Since the New Hampshire Supreme Court had jurisdiction, *see* N.H. RSA 490:4, 491:17, it appears that the decision was affirmed for lack of a substantial question.

sentenced after statute's enactment); *cf. Hayward v. United States Parole Commission,* 659 F.2d 857 (8th Cir.1981), *cert. denied,* 456 U.S. 935, 102 S.Ct. 1991, 72 L.Ed.2d 454 (1982); *Breest v. Helgemoe,* 579 F.2d 95, 102 (1st Cir.), *cert. denied,* 439 U.S. 933, 99 S.Ct. 327, 58 L.Ed.2d 329 (1978) (cases applying law at time of offense to find no *ex post facto* violation); *Barksdale v. Blackburn,* 670 F.2d 22, 26 (5th Cir.), *cert. denied,* —— U.S. ——, 102 S.Ct. 2912, 73 L.Ed.2d 1319 (1982) (crime committed before statute enacted). Therefore, the sole issue in this case is whether a change in parole eligibility brought about by administrative fiat rather than by legislative action falls within the *ex post facto* prohibition.

"[O]fficial po[s]t-sentence action that delays eligibility for supervised release runs afoul of the *ex post facto* prohibition". *Shepard v. Taylor,* 556 F.2d 648, 654 (2d Cir.1977), *cited with approval in Breest v. Helgemoe, supra.* "Absent a court pronouncement on the matter, the interpretation of the relationship between the statutes placed upon them by the administrative agency charged with their enforcement has the force and effect of law." *Love v. Fitzharris,* 460 F.2d 382 (9th Cir.1972), *vacated as moot,* 409 U.S. 1100, 93 S.Ct. 896, 34 L.Ed.2d 682 (1973), *cited with authority in Warden v. Marrero, supra.* Thus,

changes in administrative regulations which adversely affect the frequency with which a prisoner may be considered for parole, or which adversely alter the time at which a prisoner first becomes eligible for parole, have been found to violate the *ex post facto* clause. *United States ex rel. Graham v. United States Parole Commission,* 629 F.2d 1040, 1043–44 (5th Cir.1980) (remanding for further findings); *Rodriguez v. United States Parole Commission,* 594 F.2d 170 (7th Cir.1979), *cited with approval in Weaver v. Graham, supra,* 450 U.S. at 32, 101 S.Ct. at 966; *Love v. Fitzharris, supra.*

A new administrative interpretation which subjects the prisoner already sentenced to more severe punishment has the same effect as a new statute lengthening his present term [*Lindsey v. Washington, supra,* 301 U.S. 397, 57 S.Ct. 797, 81 L.Ed. 1182 (1937) ] or a new court decision making what was lawful when done a crime [*Bouie v. City of Columbia,* 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964) ]; each "alters the situation of the accused to his disadvantage . . ." [*In re Medley,* 134 U.S. 160, 171, 10 S.Ct. 384, 387, 33 L.Ed. 835 (1890) ], and each is prohibited by the Constitution.

*Id.,* 460 F.2d at 385.[6] In altering the methods of computing good time, Warden Perrin

---

**6.** Although *Love v. Fitzharris* was vacated on other grounds, its holding has since been cited as persuasive authority in several cases dealing not only with parole eligibility, but with adverse changes in the criteria utilized by federal parole authorities in granting or denying parole. *See Geraghty v. United States Parole Commission,* 579 F.2d 238, 266–67 (3d Cir. 1978) (on motion for summary judgment, remanded for further findings), *vacated on other grounds,* 445 U.S. 388, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980); *Shepard v. Taylor, supra* (combined statutory and regulatory change). Other cases either assume or follow the *Love* rationale, finding that administrative action may violate the clause. *Welsh v. Mizell, supra; Marshall v. Garrison,* 659 F.2d 440, 444–46 (4th Cir.1981); *United States v. Ferri,* 652 F.2d 325 (3d Cir.1981) (on remand from United States Supreme Court), *later dismissed for lack of jurisdiction,* 686 F.2d 147 (3d Cir.1982). Numerous cases note the *Love* holding, but find that certain changes in purely discretionary parole criteria do not constitute *ex post facto* laws. *See Warren v. United States Parole*

*Commission,* 659 F.2d 183 (D.C.Cir.1981), *cert. denied,* 455 U.S. 950, 102 S.Ct. 1454, 71 L.Ed.2d 665 (1982); *Zeidman v. United States Parole Commission,* 593 F.2d 806 (7th Cir.1979); *Rifai v. United States Parole Commission,* 586 F.2d 695 (9th Cir.1978); *Ruip v. United States,* 555 F.2d 1331 (6th Cir.1977); *see also Milhouse v. Levi,* 548 F.2d 357, 364 (D.C.Cir.1976). The Supreme Court has twice deferred consideration of the latter type of *ex post facto* claims. *See Geraghty v. United States Parole Commission, supra,* and *United States v. Addonizio,* 442 U.S. 178, 184, 99 S.Ct. 2235, 2239, 60 L.Ed.2d 805 (1979). More recently, the Supreme Court has vacated and remanded cases involving federal parole regulations for reconsideration in light of *Weaver v. Graham, supra. See Portley v. Grossman,* 450 U.S. 962, 101 S.Ct. 1476, 67 L.Ed.2d 611 (1981), and *United States v. Ferri, supra, remanded sub nom. Matthews v. United States,* 450 U.S. 962, 101 S.Ct. 1476, 67 L.Ed.2d 611 (1981). This case involves not alterations in discretionary criteria for granting parole, but alterations in eligibility

was acting under authority granted to him by statute, and his interpretations have had the force and effect of law.

Warden Perrin argues here, as he did in state court, that his prior interpretation of the statute was erroneous and that petitioner had no "vested right" to rely on his erroneous interpretation of the governing law. The Warden relies on *Mileham v. Simmons,* 588 F.2d 1279 (9th Cir.1979) (*"Mileham"*), a case decided before *Weaver v. Graham.* In *Mileham* the Ninth Circuit distinguished *Love v. Fitzharris, supra,* holding that the Arizona Supreme Court's authoritative construction of a parole statute in Mileham's case, which had the effect of declaring prior administrative interpretations erroneous, and increasing Mileham's sentence, nullified any claim of an ex *post facto* violation, since the Court's construction was not unforeseeable. The Ninth Circuit has recently reaffirmed, over vigorous dissent, the validity of the *Mileham* holding after *Weaver v. Graham. See Holguin v. Raines,* 695 F.2d 372 (9th Cir.1982) (*"Holguin"*).

The Warden argues that the New Hampshire Supreme Court's summary affirmance of his motion for summary judgment in state court constitutes an implied finding that the Warden's current interpretation of the statute is the correct one and that, in effect, the law has always been what the Warden currently contends it to be. Whether or not a summary affirmance of a lower court order unaccompanied by findings and rulings can be the kind of "authoritative construction" contemplated by *Holguin* and *Mileham* is a question which this Court does not reach because the construction urged by the Warden and adopted, *arguendo,* by the New Hampshire Supreme Court is not foreseeable. The statute itself, N.H. RSA 651:55–b II (Supp.1981), provides that meritorious service credits shall be applied to the minimum and maximum *term* of the sentence, not to the time served. Elsewhere in the statutory scheme it is provided that a prisoner first becomes eligi-

ble for parole upon "expiration of the minimum term of his sentence, minus any credits to which he is entitled under the provisions of ... RSA 651:55–b...." N.H. RSA 651:45 I (Supp.1981). Thus, under the New Hampshire statutes and the cases decided thereunder, the words "minimum term" have meant minimum sentence, not time served. See *Nichols v. Helgemoe,* 117 N.H. 57, 61–62, 369 A.2d 614, 617–18 (1977); *Breest v. Helgemoe,* 117 N.H. 40, 369 A.2d 612 (1977). Any New Hampshire Supreme Court decision to the contrary would be sufficiently unforeseeable as to prohibit its retroactive application. *Cf. Marks v. United States,* 430 U.S. 188, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977). "If a state legislature is barred by the *Ex Post Facto* Clause from passing such a law, it must follow that a State Supreme Court is barred by the Due Process Clause from achieving precisely the same result by judicial construction." *Id.* at 192, 97 S.Ct. at 993, *quoting Bouie v. City of Columbia, supra,* 378 U.S. at 353–54, 84 S.Ct. at 1702–03.

■ Moreover, the Court has grave reservations as to whether state judicial approval of an administrative interpretation retroactively applied to a prisoner to his disadvantage could survive an ex *post facto* challenge under *Weaver v. Graham,* regardless of the foreseeability of that decision. *See Holguin, supra* (Reinhart, J., dissenting). If a parole regulation is erroneous in light of *previously* existing court precedents, there is no ex *post facto* violation when an administrative agency changes its parole regulations to comport with the then existing law. *See Caballery v. United States Parole Commission,* 673 F.2d 43, 46 (2d Cir.), *cert. denied,* —— U.S. ——, 102 S.Ct. 2965, 73 L.Ed.2d 1354 (1982). However, when an administrator changes the interpretation of the law in the absence of previous court precedent, subsequent court action which purports to ratify that administrative interpretation raises serious constitutional questions under the ex *post facto* clause. Contrary to the Warden's assertion, the issue is

to be considered for parole, *see* n. 3 *supra,* and the authorities are uniform in holding that this

type of regulatory change may constitute an *ex post facto* law.

not whether the petitioner had a "vested right" in an "erroneous" interpretation, but is whether, at the time he committed the crime, he had "fair warning" of the consequences of his acts. *Weaver v. Graham, supra,* 450 U.S. at 28, 30, 101 S.Ct. at 963, 965. Here, neither the Warden nor the New Hampshire Supreme Court was writing on a clean slate. The law of which petitioner had notice at the time he committed the crime for which he was sentenced was that up to sixty days of meritorious service credits could be earned per year. By the time he was convicted, the Warden, with the subsequent approval of the New Hampshire Supreme Court, had changed the rules to petitioner's disadvantage. The law had changed.[7]

█ An administrative or judicial pronouncement that prior administrative interpretations of the statute were erroneous does not alone vitiate the *ex post facto* problem. A legislative amendment is often a legislative pronouncement that prior law was undesirable or erroneous. The *ex post facto* clause nevertheless bars the retroactive application of the newly-enacted legislation if that legislation is more onerous. Similarly, where an administrator changes what was a legally binding interpretation of statute, it is difficult to imagine how a subsequent administrative ruling, even if sanctioned by a court, can be held to give retroactive notice to a prisoner disadvantaged thereby without running afoul of *Weaver*. In this case, the dilemma is made all the more acute by the summary nature of the state court's affirmance, since there is a substantial and unresolved question as to what "notice" a summary affirmance may provide to anyone, particularly one in the position of petitioner.

Accordingly, the Court finds and rules that the Warden's application of the revised method of calculation of good conduct credits to petitioner is in violation of the *ex post facto* prohibition. The writ of habeas corpus is granted. The Warden shall compute petitioner's credits in accordance with the method in effect on September 29, 1978.

SO ORDERED.

7. This case is therefore distinguishable from those where there has been a judicial interpretation of a previously unconstrued statute.