**Maurice R. LERNER**

v.

**Matthew GILL, et al.**

No. 81–0289.

United States District Court,
D. Rhode Island.

Jan. 13, 1984.

Robert B. Mann, Providence, R.I., and Robert M. Bonin, Boston, Mass., for plaintiff.

David H. Leach, Sp. Asst. Atty. Gen., of the State of R.I., Providence, R.I., for defendants.

OPINION

FRANCIS J. BOYLE, Chief Judge.

This action is a Petition for a Writ of Habeas Corpus under the provisions of 28 U.S.C. § 2254, in which the Petitioner seeks a declaration that he is eligible for parole consideration by the State of Rhode Island.

Petitioner was sentenced on September 14, 1970 to two consecutive life sentences and an additional consecutive ten year sentence following conviction on two counts of murder and one count of conspiracy to murder. The offenses occurred on April 20, 1968. They involved the daytime shotgun murder of two victims in a public market, which murders had been planned over a period of days. *State v. Patriarca*, 112 R.I. 14, 18–21, 308 A.2d 300, 305–307 (1973). The sentences began retroactively on August 12, 1969. At and before the time of the commencement of the sentences, § 13–8–13, R.I. Gen.Laws provided that prisoners sentenced to imprisonment for life were parole eligible after twenty years imprisonment. On April 30, 1970, almost two years after the offenses, after the sentence had commenced, but five months before the sentences were imposed,

the General Assembly of the State of Rhode Island amended § 13–8–13 to provide parole eligibility for life sentences after imprisonment for ten years. *In re Advisory Opinion to the Governor*, 421 A.2d 535 (R.I.1980).

In January of 1973, the then Attorney General of the State of Rhode Island, as legal advisor to the Department of Corrections, expressed the opinion to the Parole Board that prisoners sentenced to multiple sentences which were not imposed simultaneously, are deemed to be serving concurrent sentences for parole eligibility purposes. The opinion did not specifically discuss prisoners serving life terms.

On August 3, 1976, the then Attorney General specifically advised the Department of Corrections that Petitioner would become parole eligible on August 14, 1979, having served ten years of his two life sentences. The Attorney General based his opinion on the failure of the General Assembly in R.I.Gen.Laws § 13–8–13 to differentiate a life sentence from life sentences. Thereafter, Petitioner was in fact considered parole eligible by the Parole Board, transferred to Minimum Security, was made eligible for work release programs, and appeared twice before the Parole Board upon his applications for parole in March and September, 1979. This action was taken on the basis of the Parole Board's belief that "if the judge sentences a man to two consecutive life sentences, as far as we are aware, in Rhode Island it has been held that the man is eligible for parole after serving 10 years, according to the current laws." (Letter of Parole Board to Attorney General dated October 17, 1979).

On October 19, 1979, the then Attorney General expressed the opinion that under Rhode Island law a prisoner serving consecutive life terms was required to serve ten years on each life term, or, in the Petitioner's situation a total of twenty years before becoming parole eligible. The opinion was sought with specific reference to the Petitioner. On January 7, 1980, Petitioner was transferred back to Maximum Security, denied participation in work release or furlough programs and not further considered for parole.

On January 30, 1980, as authorized by the Constitution of the State of Rhode Island, Amendment Twelve, § 2, the Governor of the State requested an advisory opinion of the Supreme Court as to whether an individual sentenced to two or more consecutive life terms of imprisonment must serve not less than ten years on each term of life imprisonment for parole eligibility. Three of the five justices responded that Rhode Island law required an individual who had been sentenced to serve two or more consecutive life sentences to serve ten years on each sentence before seeking parole. One justice expressed a contrary opinion and one justice did not participate.

At least from August 3, 1976 to October 19, 1979 or January 30, 1980 Petitioner had understood that he would be parole eligible in 1979. The Rhode Island Supreme Court in *Lerner v. Gill*, 463 A.2d 1352, 1355 (R.I.1983) in part states "Although there is no evidence in the record that Lerner was formally advised of his status in 1976, it cannot be disputed that he believed that he would be eligible for parole in 1979. "Accordingly, for more than two years of the time that Petitioner has been in prison he has lived with the expectation that he would be eligible for parole consideration as of August, 1979. This eligibility carries with it the opportunity to reside in the Minimum Security section of the prison and to participate in work release or furlough programs, and the hope that at some time the Parole Board may see fit to grant him parole. It now appears, under the holding of *Lerner v. Gill, supra,* that Petitioner will not be eligible for parole consideration until August of 1989.

Petitioner argues that (1) he has been subjected to increased punishment in violation of the prohibition against *ex post facto* laws contained in the United States Constitution Art. I, Sections 9 and 10, (2) that he has been subjected to increased punishment in violation of the guarantee of due process of law contained in the Fourteenth Amendment as explicated in *Bouie v. City*

*of Columbia,* 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964) and subsequent cases, and, (3) that fundamental fairness imposes a due process obligation preventing the State from altering its existing policy to his detriment.

As noted earlier, the offenses for which Petitioner was sentenced occurred on April 20, 1968. He was convicted on March 27, 1970 and sentence was imposed on September 14, 1970.

On the date of the offense, a life sentence required a prisoner to serve twenty years before he was parole eligible. On April 30, 1970, after Petitioner was convicted but before he was sentenced, the statute was amended to read that "In case of a prisoner sentenced to imprisonment for life such permit (to be at liberty on parole) may be issued at any time after such prisoner has served not less than ten (10) years imprisonment ..." This latter provision was construed in an *Advisory Opinion to the Governor,* October 9, 1980, 421 A.2d 535 (R.I.1980) to mean that a prisoner who was serving consecutive life sentences would not be parole eligible until he had served ten years for each life sentence. Thus, Petitioner's two consecutive life sentences would require that he serve twenty years before he was parole eligible. Following the Advisory Opinion, the General Assembly of the State of Rhode Island on May 7, 1981 further amended the statute by adding a provision which specifically related to consecutive life sentences and parole eligibility.

(b) In case of a prisoner sentenced consecutively to more than one life term, for crimes occurring after [May 7, 1981], such permit may be issued only after such prisoner has served not less than ten (10) years consecutively on each life sentence; provided, however, that nothing contained in this subsection shall be construed as permitting the issuance of such a permit when a prisoner who has been sentenced consecutively to more than one life term for crimes occurring

before [May 7, 1981] has served not less than ten (10) years on each life sentence.[1]

The act which amended § 13–8–13 to reduce the period of time required of a prisoner sentenced to life from twenty to ten years expressly provided that all acts or part of acts "inconsistent" with the amendment were repealed.

The legislative history of parole eligibility sets the stage for Petitioner's argument that the applicable statute is R.I. Public Laws 1970, Chapter 120, and that under that statute a life prisoner is eligible for parole in ten years irrespective of the number of concurrent life sentences which were imposed.

The Petitioner originally filed a Petition for Habeas Corpus in this Court. After hearing this Court stayed the proceeding to enable Petitioner to exhaust his available remedies in the courts of the State of Rhode Island. 28 U.S.C. § 2254(b) Petitioner filed a Petition for Post Conviction Relief in the Superior Court of the State of Rhode Island. The Superior Court filed its Decision on April 21, 1983, holding that the twenty year requirement was an *ex post facto* imposition and determined that Petitioner was eligible for parole consideration. On appeal to the Rhode Island Supreme Court, the Superior Court's determination was reversed and it was held that the application of the twenty year requirement to Petitioner was not an *ex post facto* application in violation of either the Federal Constitution or the Constitution of the State of Rhode Island and that Petitioner's due process rights were not violated. *Lerner v. Gill,* 463 A.2d 1352 (R.I.1983).

Since the Petitioner has now fully exhausted his available state remedy this Court must now address the merits of his Petition.

The essence of the Opinion of the Rhode Island Supreme Court is that Petitioner's *ex post facto* argument is without merit because the Parole Board did not act in a legislative manner, did not make rules, had no power to make law, and indeed did not

---

**1.** It appears that the "provided however" provision in all probability applies only to petitioner.

do so. The court based this conclusion on *Ross v. Oregon,* 227 U.S. 150, 33 S.Ct. 220, 57 L.Ed. 458 (1913). In *Ross* it was held that the *ex post facto* clause was a limitation upon legislative power. The court found support in *New Orleans Water Works Co. v. Louisiana Sugar Refining Co.,* 125 U.S. 18, 30–32, 8 S.Ct. 741, 747–748, 31 L.Ed. 607 (1888) which held that the *ex post facto* provision had no application to "Administrative" doings. *New Orleans Water Works, supra,* considered a contention that a municipal ordinance impaired the obligation of contract. The Court found that the City was acting in a proprietary matter concerning the public water supply and that the *ex post facto* prohibition did not apply. Its view that administrative doings are not law would find little support today. For example, in *Appleby v. Delaney,* 271 U.S. 403, 409, 46 S.Ct. 581, 583, 70 L.Ed. 1009 (1926), the court stated:

> The authority of the Dock Commissioner and the Sinking Fund Trustees, under the Act of 1871, is such as to make the plan and the refusal equivalent to a statute of the State, and, assuming that it is in conflict with the grant and covenants of relator's deeds it is a law of the State impairing a contract obligation under Sec. 10, Article I of the Federal Constitution.

To the same effect *see Cuyahoga River Power Co. v. City of Akron,* 240 U.S. 462, 464, 36 S.Ct. 402, 403, 60 L.Ed. 743 (1916); *Atlantic Coast Line Railroad v. City of Goldsboro,* 232 U.S. 548, 555, 34 S.Ct. 364, 366, 58 L.Ed. 721 (1914). An order of the Railroad Commission of Indiana directing the installation of an interlocking plant at the crossing of two railroads in order to protect and guard the crossing was argued to impair the obligation of a contract between the owners of the railroads in *Grand Trunk Western Railway v. Railroad Commission of Indiana,* 221 U.S. 400, 31 S.Ct. 537, 55 L.Ed. 786 (1911). The court stated at page 403, 31 S.Ct. at page 537:

> Observing first, that the order is a legislative act by an instrumentality of the State exercising delegated authority (*Prentis v. Atlantic Coast Line Co.,* 211

U.S. 210, 226 [29 S.Ct. 67, 69, 53 L.Ed. 150 (1908)]), is of the same force as if made by the legislature, and so is a law of the State within the meaning of the contract clause of the Constitution (*New Orleans Water Works Co. v. Louisiana Sugar Refining Co.,* 125 U.S. 18, 31 [8 S.Ct. 741, 748, 31 L.Ed. 607 (1888)]; *St. Paul Gas Light Co. v. St. Paul,* 181 U.S. 142, 148 [21 S.Ct. 575, 577, 45 L.Ed. 788 (1901)]; *Northern Pacific Ry. Co. v. Duluth,* 208 U.S. 583, 590 [28 S.Ct. 341, 342, 52 L.Ed. 630 (1908)]), we come to consider whether it does impair the obligation of the contract. Obviously it does not, if the contract creates no obligation respecting the expense which the order entails.

The foundation of the Rhode Island Supreme Court's determination that there was no *ex post facto* deprivation in this instance is its conclusion that the Parole Board had no rule making power and that "Apparently the Board on its own chose to make its interpretive determination about a legislative mandate. Its decision did not have the force of law and therefore cannot be considered to be a legislative abuse. To hold otherwise would ignore the precepts upon which the *ex post facto* prohibition is based." *Lerner* at 1359.

The premise seems to be that the *ex post facto* clause operates only if the action is deemed legislative or administrative rule making, and does not apply if the action is merely "interpretive." *Id.* at 1358. The court pointed out that it was not until 1982 that the General Assembly adopted legislation (P.L.1982, Ch. 375), that required the Parole Board to adopt specific criteria by which it would evaluate applications for parole and to reduce to writing the rationale for whatever action it takes on an application. Thus the informality by which the Parole Board previously acted is characterized as "interpretive" and beyond the scope of *ex post facto* prohibition. Although the court professed preference for substance over form, this distinction elevates form to substance in the constitutional sense. Had the Parole Board been specifically authoriz-

ed by statute to adopt regulations concerning parole eligibility in instances in which prisoners were sentenced to consecutive life terms, and after Petitioner's sentencing increased the requirements, there would be no doubt of an *ex post facto* action. The fact that the same result was accomplished informally, at a time when the Parole Board was presumably authorized to act informally is given a different result.

The Respondent argues that the General Assembly has not given the Parole Board authority to determine parole eligibility since minimum time requirements are set by an act of the legislature. It is contended that the Board's authority is limited solely to whether or not a prisoner who is parole eligible may be released.

The natural and necessary question is by what authority did the Parole Board act in twice considering Petitioner for parole.[2] The lack of expressed specific formal authorization certainly does not nullify the effect of the proceeding. Two Attorneys General of the State of Rhode Island had given opinions on the basis of which Petitioner was actually considered parole eligible. There was no suggestion that the Parole Board was not authorized to act by either Attorney General. The Parole Board is a public body and presumably its actions are those which are authorized by the General Assembly, whether they are cast in concrete in the form of rules, or based on habit or custom. To say that its actions were merely "interpretive" is to provide a significant and apparently heretofore unrecognized exception to the bar against *ex post facto* legislation.

■ Concern for federal-state relations mandates an appropriate deference to the highest court of the State of Rhode Island. The choice, in circumstances where there is a choice, is to adopt the view of the highest court of a state.

However, changes, hopefully for the better, have occurred since 1888, when *New*

*Orleans Water Works Co. v. Louisiana Sugar Refining Co., supra* was decided. Rights are not only subject to specific acts of the legislature, but also to those of its delegates or alter egos, in the persons of administrative bodies. Today law is made by administrative agencies, and this is generally the law which may impinge most directly upon individual rights.

Clearly, the construction of the *ex post facto* clause advanced by Respondent State does not constitute a change that inflicts a greater punishment than the law annexed to the charge at the time the crime was committed. *Calder v. Bull,* 3 U.S. (3 Dall.) 385, 1 L.Ed. 648 (1798). It was twenty years then and it is twenty years now. The inquiry, however, does not end here. Instead, it begins. It would be imprudent to suggest that subsequent enactments of legislature are meaningless. The deterrent effect of the possible punishment is of no particular personal significance after the doing of the evil deeds. Although the Rhode Island Supreme Court disclaims any legislative effect to Parole Board decisions, it is hardly realistic from the Petitioner prisoner's position to consider whatever the Parole Commission has done as less than effective. In any event, he is now considered to be parole eligible when he has served twenty years.

However, no one would argue that parole eligibility may be conditioned upon a shorter minimum period of time served adopted after the commission of the offense. *Rooney v. North Dakota,* 196 U.S. 319, 325, 25 S.Ct. 264, 265, 49 L.Ed. 494 (1905); *Breest v. Helgemoe,* 579 F.2d 95, 102 (1st Cir. 1978).

In *Weaver v. Graham,* 450 U.S. 24, 30–31, 101 S.Ct. 960, 965–966, 67 L.Ed.2d 17 (1981), it was held that "even if a statute merely alters penal provisions accorded by the grace of the legislature, it violates the Clause (*Ex Post Facto* ) if it is both retrospective and more onerous than the law in

---

**2.** R.I. Gen.Laws § 13–8–8 provides that a prisoner's sentence more than six (6) months "shall be subject to the control of the parole board as hereinafter provided." Thereafter follow provisions relating to votes of the board and the specific provision, Sec. 13–8–13, here in question.

effect on the date of the offense." *Weaver, supra* involved a reduction of "gain time" for good conduct by a statute enacted subsequent to the offense and sentencing. In some circumstances retroactive changes which increase the time for parole eligibility may be unconstitutional. *Breest v. Helgemoe*, 579 F.2d 95, 102 (1st Cir. 1978). Although a petitioner's entitlement to parole is a matter which rests in the discretion of the Parole Board, as pointed out in *Greenfield v. Scafati*, 277 F.Supp. 644 (D.Mass.1967) (three judge court) "It would not follow because a prisoner might not receive parole that it would not be an unlawful ex post facto burden to deprive him altogether of the right to be found qualified." The application of the *ex post facto* provision does not rest upon vested rights analysis which relates specifically to claims under the Contract or Due Process Clauses but operates where there is found to be the alteration of penal provisions which is "both retrospective and more onerous than the law in effect on the date of the offense." *Weaver v. Graham*, 450 U.S. 24, 30–31, 101 S.Ct. 960, 965–966, 67 L.Ed.2d 17 (1981) citing *Durant v. United States*, 410 F.2d 689, 691 (1st Cir.1969).

This petition raises issues similar to those considered and decided by the court in *Piper v. Perrin*, 560 F.Supp. 253 (D.N.H. 1983).[3] In *Piper*, the court held as an unlawful *ex post facto* application a method of calculating "good time" and "meritorious service credits" established by the legislature. It held that in altering the methods of computing good time, the warden was acting under authority granted to him by statute and his interpretations had the force and effect of law. *See also Love v. Fitzharris*, 460 F.2d 382, 385 (9th Cir.1972). Neither *Piper v. Perrin, supra* nor *Love v. Fitzharris, supra,* specifically considered subsequent explicit judicial consideration of the correct interpretation of the statutory authority. In the present instance in an Advisory Opinion an earlier erroneous interpretation of the statute was corrected. In *Love* there was no subsequent judicial

determination and in *Piper*, the District Court held that the earlier interpretation was probably the correct interpretation.

Some courts have considered this issue from the point of view of foreseeability, that is, that the subsequent judicial construction is one which might be foreseen. The *Piper* court while expressing "grave reservations as to whether state judicial approval of an administrative interpretation retroactively applied to a prisoner to his disadvantage could survive an *ex post facto* challenge under *Weaver v. Graham*, regardless of the foreseeability of that decision," held that the state construction was not foreseeable.

The Respondent contends in its brief that only the proper construction of the eligibility statute was in doubt and "the subsequent interpretation, though perhaps unexpected, was not unforeseeable."

This indeed is a strained position, since what is unexpected would ordinarily be termed to be unforeseeable, unless foreseeable is understood to be that which can occur rather than that which might be expected to occur under the circumstances. Crediting the Advisory Opinion of the Rhode Island Supreme Court as a judicial construction, a credit which is not required in Rhode Island Law, *see In re Advisory Opinion to the Governor*, 109 R.I. 289, 284 A.2d 295 (1971); *Opinion to the Governor*, 96 R.I. 358, 191 A.2d 611 (1963); *Opinion to the House of Representatives*, 88 R.I. 396, 149 A.2d 343 (1959), three members of the court supported the view that the statute required ten years of each sentence to be served before a prisoner was parole eligible, one member abstained while one dissented. At least one member of the Supreme Court considered the result unforeseeable in the sense used by the Respondent. Two Attorneys General of the State of Rhode Island considered the result unforeseeable and ruled in effect or specifically that Petitioner was parole eligible after serving one ten year period of his consecutive sentences. Whether viewed from an objective standard or that of the

---

**3.** This opinion was filed after oral argument of    this cause in the Rhode Island Supreme Court.

Petitioner, there are at least three officials who considered the result unforeseeable.

Consideration of the statute itself demonstrates the unforeseeability of the result reached in the court's Advisory Opinion. Section 13–8–13 provides that "In case of a prisoner sentenced to imprisonment for life, such permit (parole) may be issued at any time after such prisoner has served not less than ten (10) years imprisonment provided, however, in case of a prisoner serving a sentence or sentences of a length making him ineligible for a permit in less than ten (10) years imprisonment pursuant to § 13–8–9 and § 13–8–10, such permit may be issued at any time after such prisoner has served not less than ten (10) years imprisonment ..." The statute is eminently, abundantly and unquestionably clear that successive sentences given a life prisoner shall not require in excess of one ten year period of custody before a life prisoner is parole eligible whatever the length of a successive non-life sentence (such as 40 years) which requires incarceration for ⅓ of the time. R.I. Gen.Laws § 13–8–9. Surely, had the legislature considered it significant, it would have addressed itself to the subject of successive life sentences. That it thought such a provision unnecessary is a strong persuasive argument that it considered the matter attended to by the statute itself. The Parole Board, literally applying the provision, realistically had only two options; (1) that with respect to consecutive life sentences, the provision required completion of the first life sentence and ten years served on the second life sentence—an obviously absurd construction, or (2) only one ten year term was required irrespective of the number or order of life sentences the prisoner was serving. Indeed, the conclusion that the court reached could hardly have been considered a likely alternative by the Parole Board faced with an unconstrued statute. There is no specific language which would presage the construction of the statute arrived at by the Rhode Island Supreme Court. The result was not foreseeable. Since it is impossible that a successive life sentence can begin before the end of preceding sentence, the result reached by the court must be considered innovative rather than foreseeable.

Respondent urges also that the *ex post facto* clause applies only if the penalty is increased after the precise time of the commission of the offense, and that since twenty years confinement was statutorily required in order for Petitioner to be parole eligible at the precise time of the commission of the offense, there is no *ex post facto* violation in these circumstances. The factual basis of this argument is correct since the reduction to ten (10) years occurred not only after the commission of the offense but also after the retroactive sentence had begun. If taken literally, there is much general authority to this effect. The argument fails however for at least three reasons. One response to this argument is that the State has never taken the position that Petitioner is being denied parole consideration on the basis of the law as it existed at the time of the offense. A further response is that technically, the twenty year statute was repealed by Chapter 120, Public Laws of Rhode Island, adopted April 20, 1970. It is plausible to argue that since the twenty year statute has been repealed and if it was the only statute which could be applied, there is now no requirement of any time which Petitioner would have to serve in order to be parole eligible. A third and more likely response is that Petitioner is entitled to the benefit of any subsequently adopted less stringent legislation and that this benefit may not be withdrawn *ex post facto*. *Rooney v. North Dakota*, 196 U.S. 319, 325, 25 S.Ct. 264, 265, 49 L.Ed. 494 (1905); *Breest v. Helgemoe*, 579 F.2d 95, 102 (1st Cir.1978).

■ In sum, the Petitioner for more than two years of his incarceration was informed by the Parole Board and believed that he was parole eligible. The action of the Parole Board was based upon a rational if not correct application of the statute in an area of the Board's particular expertise. Although there is no record of notification to Petitioner of his parole eligible status, official action was taken in the form of two parole hearings based upon legal advice

from responsible officials. Petitioner was afforded furloughs and work release privileges which are available only to parole eligible prisoners. It stretches the imagination beyond reason to come to any conclusion other than the conclusion that Petitioner had been consciously determined to be parole eligible. A revocation of that status both rationally and on the basis of authority is an unlawful *ex post facto* exposition, and Petitioner should be considered to be eligible for consideration for a parole permit. *Weaver v. Graham*, 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981); *Love v. Fitzharris*, 460 F.2d 382, 385 (9th Cir.1972); *Piper v. Perrin*, 560 F.Supp. 253 (D.N.H. 1983); *Greenfield v. Scafati*, 277 F.Supp. 644 (D.Mass.1967). Of course, whether or not Petitioner should be admitted to parole is a question within the lawful discretion conferred upon the Parole Board.

The conclusion that the action of the Rhode Island Parole Board denying petitioner eligibility to be considered for parole is an *ex post facto* action under legislative authority makes it unnecessary to consider Petitioner's other contentions of due process violations.

Petitioner's petition is granted and a writ of Habeas Corpus shall issue declaring that Petitioner is eligible to be considered for parole in accord with law.

SO ORDERED.